PER CURIAM.
 

 Custer Medical Center seeks review of the decision of the Third District Court of Appeal in
 
 United Automobile Insurance Co. v. Custer Medical Center,
 
 990 So.2d 633, 685 (Fla. 3d DCA 2008), on the basis that it expressly and directly conflicts with the decisions of this Court in
 
 Allstate Insurance Co. v. Kaklamanos,
 
 843 So.2d 885 (Fla.2003),
 
 U.S. Security Insurance Co. v. Cimino,
 
 754 So.2d 697 (Fla.2000), and
 
 Dorse v. Armstrong World Industries, Inc.,
 
 513 So.2d 1265 (Fla.1987). We have jurisdiction.
 
 See
 
 art. V, § 3(b)(3), Fla. Const. We quash the decision below and remand for reinstatement of the decision of the circuit court appellate division. The Third District’s decision misapplied the standard of review for second-tier certiora-ri review and in doing so erroneously created new appellate jurisdiction that expressly and directly conflicts with multiple decisions involving various areas of Florida law.
 

 
 *1089
 
 FACTS AND PROCEDURAL HISTORY
 

 On January 4, 2002, the insured, Maxi-mo Masis, was injured in an automobile accident in Miami. Masis was a passenger in a vehicle that was involved in a collision with a second vehicle that had failed to halt at a stop sign. He sought treatment from Custer Medical Center (Custer) for pain in his neck, shoulder, and lower back. Masis received medical treatment at Custer from January 8 through March 1, 2002, for which he incurred $4,250 in charges.
 

 On January 8, 2002, Masis also completed and submitted an application for personal injury protection (PIP) benefits. Subsequently, on January 11, 2002, a law firm submitted an attorney representation letter to Masis’s insurer, United Automobile Insurance Company (United), which notified United that Masis would be making a claim for PIP benefits under his policy. In response, United established a claim file.
 

 Upon the termination of Masis’s treatment on March 1, 2002, Custer submitted a final bill of $4,250 to United which was admittedly received by United on March 26, 2002, according to a United internal claim register and also reflected on an acknowledgment of claim letter from United dated March 26, 2002. After all medical treatment had been completed and all the respective bills submitted, United sent certified letters to Masis and his counsel dated March 27, 2002, which notified them that United had scheduled a medical examination of Masis for April 11, 2002, a date long after completion of both treatment and submission of all bills. Masis did not appear for the medical examination or answer United’s letter. United sent another request on April 12, 2002, for Masis to attend a medical examination scheduled for April 29, 2009. Masis also did not appear or answer United’s letter. As a result, on May 10, 2002, United suspended or denied Masis’s PIP benefits, effective as of April 11, 2002.
 
 [1]
 

 
 *1090
 
 In June of 2002, Masis’s attorney notified United that the firm had withdrawn from representation of Masis. Thereafter, as Masis’s assignee, Custer filed an action in the County Court of Miami-Dade County for reimbursement of the $1,250 in medical treatment expenses that were in excess of Masis’s policy deductible. United asserted the
 
 affirmative defense
 
 that Ma-sis’s failure to appear for the scheduled medical examination was “unreasonable” as a matter of law under section 627.736(7), Florida Statutes (2001). The relevant portion of this statute provides:
 

 If a person unreasonably refuses to submit to an examination, the personal injury protection carrier is no longer liable for
 
 subsequent
 
 personal injury protection benefits.
 

 § 627.736(7)(b) (emphasis supplied). There were no claims for “subsequent” PIP benefits. All treatment was completed by March 1, 2002, and all bills and claims for benefits for this treatment were submitted before any exams were scheduled and long before the purported denial date of April 12, 2002, established by United.
 

 During the jury trial, Custer presented the testimony of (1) a person who was in the vehicle with Masis when the accident occurred; (2) a doctor who treated Masis at Custer Medical Center; (3) the corporate representative and litigation adjuster for United; and (4) the corporate representative and records custodian for Custer. After Custer rested its case, United moved for a directed verdict without having presented
 
 any
 
 evidence on its affirmative defense.
 

 The trial court granted United’s motion on the basis that (1) two failures to appear for medical examinations without excuse or objection to the notices constituted an unreasonable refusal to submit to the requested medical examination, and (2) in
 
 U.S. Security Insurance Co. v. Silva,
 
 693 So.2d 593 (Fla. 3d DCA 1997), the Third District held that an insurer is not liable for subsequent benefits after the time of an insured’s unreasonable refusal to appear at a medical examination.
 
 [2]
 
 Moreover, the trial court stated that the only basis upon which United prevailed was Masis’s failure to appear at a medical examination, and that judgment would otherwise have been rendered in favor of Custer because it had satisfied all the elements of its claim (i.e., reasonable, related, and necessary medical expenses). The trial court discharged the jury in light of its ruling on the motion for directed verdict. Thereafter, the trial court entered a final judgment in favor of United.
 

 Custer appealed the judgment to the Circuit Court of the Eleventh Judicial Circuit. The circuit court appellate division reversed the judgment entered pursuant to the directed verdict and remanded for a trial on the merits by reasoning that
 

 [m]otions for directed verdict should be resolved with extreme caution since the granting thereof holds that one side of the case is essentially devoid of probative evidence.
 
 Perry v. Red Wing Shoe Co.,
 
 597 So.2d 821, 822 (Fla. 3d DCA 1992). The trial judge is authorized to grant such a motion only if there is no evidence or reasonable inferences to
 
 *1091
 
 support the opposing position. 7A[;]
 
 see also Sal[a]m v. Benmelech,
 
 590 So.2d 1008 (Fla. 3d DCA 1991). The evidence must be considered in the light most favorable to the nonmoving party.
 
 Id.
 

 In this case, the trial judge failed to consider the evidence in a light most favorable to the non-moving party. There is no legal authority supporting United’s position that failure to appear is “unreasonable” as a matter of law. United claimed
 
 the affirmative defense
 
 that the failure to appear was unreasonable. United therefore had the burden to show, by evidence, that the failure to attend the [medical examination] was unreasonable. Nor does the simple showing of failure to appear shift the burden of proof to the Plaintiff to prove why the insured failed to appear.... Therefore, in the absence of evidence supporting the affirmative defense, the directed verdict is premature.
 

 Custer Med. Ctr. v. United Auto. Ins. Co.,
 
 No. 04-520 AP, at 2-3 (Fla. 11th Cir.Ct. Feb. 14, 2006) (amended opinion) (emphasis supplied).
 

 On March 1, 2006, United petitioned the Third District Court of Appeal for a writ of certiorari, contending that the circuit court appellate division violated clearly established principles of law, resulting in a miscarriage of justice. On September 5, 2007, the district court issued an initial opinion that quashed the circuit court’s decision based solely on the authority of
 
 Griffin v. Stonewall Insurance Co.,
 
 346 So.2d 97 (Fla. 3d DCA 1977), and
 
 Goldman v. State Farm General Insurance Co.,
 
 660 So.2d 300 (Fla. 4th DCA 1995). In
 
 Griffin,
 
 the Third District considered the 1975 version of the PIP statute, which did
 
 not
 
 include the
 
 “unreasonable refusal
 
 ” provision, and held that an insured’s failure to comply with the condition precedent of attendance at a medical examination constituted grounds to enter judgment for the insurer.
 
 See
 
 346 So.2d at 98.
 
 Goldman
 
 involved a
 
 homeowner’s
 
 insurance policy and the insured’s failure to attend an examination under oath pursuant to the contractual terms of the policy, which has no application in the statutorily required coverage context.
 
 See
 
 660 So.2d at 301. The Florida No-Fault statute is mandatory and does not recognize such a condition. It is therefore invalid and contrary to the statutory terms. Consequently, Custer filed a motion for rehearing or rehearing en banc on the grounds that (1) the decision rested on inapplicable authority (i.e., the distinction in the earlier statute at issue in
 
 Griffin)-,
 
 (2) the district court shifted the burden to the plaintiff to disprove the defendant’s affirmative defense; and (3) the district court exercised certio-rari jurisdiction despite United’s failure to demonstrate any departure from the essential requirements of law.
 

 Thereafter, the district court ordered the parties to supplement the record with the trial exhibits, specifically the insurance policy, and the appendix to the initial brief filed in the circuit court. In a corrected opinion, the Third District denied the motion for rehearing and rehearing en banc and elaborated on its basis for review.
 
 See United Aut. Ins. Co. v. Custer Med. Ctr.,
 
 990 So.2d 633, 635 (Fla. 3d DCA 2008)
 
 (Custer
 
 II). The Third District (1) granted the petition for writ of certiorari, (2) quashed the decision by the circuit court appellate division, and (3) remanded with directions to reinstate the directed verdict in favor of United.
 
 See id.
 
 In so holding, the Third District stated that the circuit court appellate division had departed from the essential requirements of law, but did not state the manner in which the circuit court had violated a clearly established legal principle by requiring United to present some proof of its affirmative defense before it could obtain a directed verdict in
 
 *1092
 
 its favor on an affirmative defense. In addition, the district court considered and relied upon, for the first time, a “Conditions” provision in the policy, which had not been advanced by the parties or analyzed in any prior decision or ruling in this matter.
 
 See id.
 
 at 634.
 

 Custer invoked this Court’s discretionary jurisdiction based on conflict between the decision below and this Court’s decisions in
 
 Allstate Insurance Co. v. Kaklamanos,
 
 843 So.2d 885 (Fla.2003),
 
 U.S. Security Insurance Co. v. Cimino,
 
 754 So.2d 697 (Fla.2000), and
 
 Dorse v. Armstrong World Industries, Inc.,
 
 513 So.2d 1265 (Fla.1987).
 

 ANALYSIS
 

 This Court has continually applied certain fundamental principles for the use of certiorari to review decisions rendered by the circuit court acting in its appellate capacity from the time common-law certiorari jurisdiction was first recognized in 1855.
 
 See, e.g., Allstate Ins. Co. v. Kaklamanos,
 
 843 So.2d 885 (Fla.2003);
 
 Ivey v. Allstate Ins. Co.,
 
 774 So.2d 679 (Fla.2000);
 
 Haines City Cmty. Dev. v. Heggs,
 
 658 So.2d 523 (Fla.1995);
 
 Combs v. State,
 
 436 So.2d 93 (Fla.1983);
 
 Halliday v. Jacksonville & Alligator Plank Rd. Co.,
 
 6 Fla. 304 (1855). We have consistently observed that “[a]s a case travels up the judicial ladder, review should consistently become narrower, not broader.”
 
 Haines,
 
 658 So.2d at 530. Therefore, when a district court considers a petition for second-tier certiorari review, the “inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law,” or, as otherwise stated, departed from the essential requirements of law.
 
 Id.; see also Kaklamanos,
 
 843 So.2d at 889-90.
 
 [3]
 
 The departure from the essential requirements of the law necessary for granting a writ of certiorari is something more than a simple legal error.
 
 See Kaklamanos,
 
 843 So.2d at 889 (citing
 
 Ivey,
 
 774 So.2d at 682). Rather, a district court should exercise its discretion to grant review only when the lower tribunal has violated a clearly established principle of law resulting in a miscarriage of justice.
 
 See id.
 
 (citing
 
 Ivey,
 
 774 So.2d at 682;
 
 Heggs,
 
 658 So.2d at 528). In
 
 Haines City Community Development v. Heggs,
 
 this Court clarified and narrowed the scope of common law certiorari jurisdiction by clearly stating that
 

 [a] decision made according to the form of the law and the rules prescribed for rendering it, although it may be erroneous in its conclusion as applied to the facts, is not an illegal or irregular act or proceeding remedial by certiorari.
 

 658 So.2d at 525 (quoting
 
 Basnet v. City of Jacksonville,
 
 18 Fla. 523, 526-27 (1882)).
 

 Furthermore, the district courts should consider the nature of the error and grant a petition for writ of certiorari
 
 “only
 
 when there has been a violation of a clearly established principle
 
 of
 
 law resulting in a miscarriage of justice.”
 
 Combs,
 
 436 So.2d at 96 (emphasis supplied). Thus, the district court’s exercise of its discretionary certiorari jurisdiction should
 

 depend on the court’s assessment of the
 
 gravity of the error
 
 and the
 
 adequacy of other relief.
 
 A judicious assessment by the appellate court will not usurp the authority of the trial judge or the role of any other appellate remedy, but will preserve the function of this great writ of review as a “backstop” to correct
 
 grievous errors
 
 that, for a variety of reasons, are not otherwise effectively subject to review.
 

 
 *1093
 

 Heggs,
 
 658 So.2d at 581 n. 14 (emphasis supplied) (quoting William A. Haddad,
 
 The Common Law Writ of Certiorari in Flori
 
 da., 29 U. Fla. L.Rev. 207, 228 (1977)). In other words, this Court has definitively expressed that certiorari cannot be used to grant a second appeal to correct the existence of mere legal error.
 
 See, e.g., Ivey,
 
 774 So.2d at 682-88. This is necessary because, unlike an appeal, common-law certiorari is an entirely discretionary exercise of jurisdiction by the court and is not taken as a matter of right.
 
 See G-W Dev. Corp. v. Village of N. Palm Bch. Zoning Bd. of Adjustment,
 
 317 So.2d 828, 830 (Fla. 4th DCA 1975). A reviewing court on appeal may correct any and all errors below, whether jurisdictional, procedural, or substantive, and may modify, reverse, or remand a judgment.
 
 See Haines,
 
 658 So.2d at 526 n. 3. In contrast, a district court cannot correct just any error that may have occurred below through a second-tier certiorari proceeding. This proceeding is considered original in the sense that the subject-matter of the action or proceeding before the court is
 
 not
 
 to be
 
 reinvestigated, tried, and determined upon the merits
 
 generally as upon appeal at law or writ of error.
 
 See id.
 
 at 525-26 (quoting
 
 Basnet v. City of Jacksonville,
 
 18 Fla. 523, 527 (1882)). Hence, a circuit court appellate decision made according to the forms of law and the rules prescribed for rendering it,
 
 although it may be erroneous in its conclusion
 
 as to what the law is as applied to facts, is
 
 not
 
 a departure from the essential requirements of law remediable by certiorari.
 
 See Ivey,
 
 774 So.2d at 682 (quoting
 
 Haines City,
 
 658 So.2d at 525).
 

 The policy behind prohibiting certiorari to function as a second appeal is that the circuit court possesses final appellate jurisdiction in cases originating in the county court.
 
 See
 
 art. V, § 5, Fla. Const. As this Court articulated in
 
 Haines,
 
 if the role of certiorari were expanded to review the correctness of the circuit court’s decision, it would amount to a second appeal that usurps the final appellate jurisdiction of the circuit court in contravention of the Florida Constitution.
 
 See id.
 
 at 526 n. 4. This would deprive litigants of final judgments obtained in the circuit court and ignore “societal interests in ending litigation within a reasonable length of time and eliminating the amount of judicial labors involved in multiple appeals.”
 
 Id.
 
 A more expansive review would also afford a litigant two appeals from a court of limited jurisdiction, while limiting a litigant to only one appeal in eases originating in a trial court of general jurisdiction.
 
 See id.
 
 (citing
 
 Flash Bonded Storage Co. v. Ades,
 
 152 Fla. 482, 12 So.2d 164, 165 (1943)).
 

 In
 
 Ivey,
 
 this Court expressed that before a district court may exercise certio-rari jurisdiction to review a decision of a circuit court acting in its appellate capacity, the district court must analyze and develop “why the [relevant] circuit court’s decision constituted a denial of procedural due process, application of incorrect law, or a miscarriage of justice.”
 
 Ivey,
 
 774 So.2d at 683;
 
 see also Kaklamanos,
 
 843 So.2d at 889-90 (reaffirming
 
 Ivey).
 
 Here, a three-judge panel of the circuit court issued a well-reasoned, written opinion that relied on well-established principles of law which mandate that a motion for directed verdict should only be granted if there is no evidence or reasonable inference to support the opposing position, and that the evidence must be considered in a light most favorable to the nonmoving party.
 
 See Custer Med. Ctr. v. United Auto. Ins. Co.,
 
 No. 04-520 AP, at 2-3 (Fla. 11th Cir.Ct. Feb. 14, 2006) (citing
 
 Perry v. Red Wing Shoe Co.,
 
 597 So.2d 821, 822 (Fla. 3d DCA 1992));
 
 see also Salam v. Benmelech,
 
 590 So.2d 1008, 1009 (Fla. 3d DCA 1991). The circuit court
 
 *1094
 
 also thoroughly supported its analysis with appropriate reference to Florida decisions.
 
 Cf. Ivey,
 
 774 So.2d at 683. In addition, the circuit court’s opinion did nothing more than reverse a county court’s final judgment entered following a directed verdict and remand for a new trial based on well-established law with regard to directed verdicts and burdens of proof for affirmative defenses.
 
 Cf. Haines City Community Dev. v. Heggs,
 
 647 So.2d 855, 856 (Fla. 2d DCA 1994),
 
 approved
 
 658 So.2d 523 (Fla.1995). Hence, the decision of the circuit court did not deprive the parties of their day in court, and did not foreclose United from proving its affirmative defense on remand.
 
 See id.
 
 Accordingly, to quash the decision on review, the Third District was required to determine and support that this is one of “those few extreme cases where the appellate court’s decision is so erroneous that justice requires that it be corrected.”
 
 Combs,
 
 436 So.2d at 95.
 

 The Third District premised its exercise of certiorari jurisdiction on the assertion that the circuit court appellate division “departed from the essential requirements of the law.” However, similar to its decision in
 
 Ivey,
 
 the district court did
 
 not
 
 supply any correct requisite analysis or sufficient rationale with regard to the manner in which the circuit court departed from the essential requirements of law in its application of the law with regard to directed verdicts. The Third District neither clarified what the circuit court held below nor did it analyze or address why this holding departed from the essential requirements of the law. The district court opinion contains no determination that a denial of procedural due process occurred, and the district court did not express the manner in which the circuit court applied an incorrect principle of law or that the decision constituted a miscarriage of justice, “as required by this Court’s precedents.”
 
 Ivey,
 
 774 So.2d at 683;
 
 see also Educ. Dev. Ctr., Inc. v. City of W. Palm Beach Zoning Bd.,
 
 541 So.2d 106, 108-09 (Fla.1989).
 

 Instead, the decision below conveys that the district court of appeal simply disagreed with the circuit court’s determination and interpretation of the applicable law.
 
 See Ivey,
 
 774 So.2d at 683;
 
 Educ. Dev. Ctr., Inc.,
 
 541 So.2d at 108-09. This disagreement is evidenced by the district court’s reliance on clearly distinguishable and inapposite precedent to hold that an insured’s attendance at a medical examination is a condition precedent to the existence of an auto insurance policy that provides PIP benefits and that, consequently, the insured rather than the insurer has the burden of proof on this issue.
 
 See Custer II,
 
 990 So.2d at 634-35. Logically, the circuit court could not have violated the essential requirements of law when that principle of law had never existed.
 

 In addition, the district court improperly considered and incorrectly relied on language in United’s policy which was contrary to existing statutory provisions, had not been advanced by the parties below, and was never involved in the consideration of the lower tribunals in the prior proceedings. After issuing an initial opinion that lacked any reference to the conditions provision in United’s policy, the Third District ordered the record to be supplemented on rehearing with the trial transcript and evidence. The district court specifically requested that the parties provide the relevant insurance policy. The Third District then altered the fundamental underpinnings of its analysis to include a contractual provision which had not been advanced as dispositive to any issue in the proceedings below. Moreover, to support its analysis that attendance at a medical examination was a condition precedent to coverage, the district court incor
 
 *1095
 
 rectly characterized a letter concerning Masis’s failure to attend a testimonial examination under oath in August, not a medical exam, as referencing Masis’s failure to attend the medical examinations scheduled in April. Of note, the letter does not support the Third District’s condition precedent analysis because the relevant quote in the letter is from the policy, which designates attendance at a testimonial examination under oath,
 
 not
 
 a medical examination, as a condition precedent to receiving PIP benefits.
 

 In contrast, the medical examinations provision, which
 
 immediately precedes
 
 the verbal exam provision, does not contain
 
 any
 
 reference to a “condition precedent,” as follows:
 

 Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld. A soon as practicable, the person making claim, (including any assignees of the injured party) shall give to “us” written proof of claim, under oath.
 
 Such person shall submit to mental or physical examinations at “our” expense when and as often as “we” may reasonably require.
 
 A copy of the medical report shall be forwarded to such a person if requested in writing.
 
 If the person unreasonably refuses to submit to an examination “we” will not be liable for subsequent personal injury protection benefits.
 

 (Emphasis supplied.) Moreover, the letter relied upon by the Third District was not advanced by the parties as relevant to consideration of the circuit court’s decision and is contrary to the statutory provisions of mandatory PIP coverage.
 

 Thus, the district court’s actions and analysis are simply an improper de novo review in a “second appeal” rather than the limited review permitted on second-tier certiorari and incorrect in both substance and approach. By expanding its scope of review, the Third District again
 

 created a new category of appellate review never before recognized under Florida law and in express and direct conflict with authority to the contrary. District courts have never been allowed to review decisions, under the guise of certiorari jurisdiction, simply because they are dissatisfied with the result of a decision of a circuit court sitting in its appellate capacity. Certiorari relief should not be afforded so differently in our various appellate courts.
 

 Ivey,
 
 774 So.2d at 683.
 

 In sum, the Third District did not consider or set forth a sufficient correct legal basis and analysis with regard to the manner in which the relevant circuit court decision denied procedural due process or departed from the essential requirements of the law resulting in a miscarriage of justice, which is a jurisdictional prerequisite to review a circuit court’s appellate decision through a petition for writ of cer-tiorari. Instead, the Third District merely disagreed with the result of the circuit court without supplying a proper and sufficient legal basis for second-tier certiorari review under
 
 Haines, Ivey,
 
 and
 
 Kaklama-nos.
 
 Accordingly, the district court misapplied the standard of review for second-tier certiorari review and therefore inappropriately exercised its discretionary jurisdiction.
 

 As in
 
 Ivey,
 
 the Third District not only “incorrectly expand[ed] the scope of certio-rari by permitting what, in essence, amounted to a second appeal,” but also rendered a result that is “contrary to well established and recognized principles of existing PIP law” and general civil procedure.
 
 Ivey,
 
 774 So.2d at 683. Specifically, the Third District held that attendance at a medical examination and testimonial exam without counsel are conditions prece
 
 *1096
 
 dent to coverage not merely benefits. This is contrary to the general principles of law concerning affirmative defenses and conditions precedent, as well as the principles underlying the PIP statute.
 

 The purpose of the no-fault statutory scheme is to “provide swift and
 
 virtually automatic payment
 
 so that the injured insured may get on with his life without undue financial interruption.”
 
 Ivey,
 
 774 So.2d at 683-84 (quoting
 
 Gov’t Emps. Ins. Co. v. Gonzalez,
 
 512 So.2d 269, 271 (Fla. 3d DCA 1987)). To this end, section 627.736(4)(b) provides that PIP insurance benefits “shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same.” After an insurance company receives notice of a claim, the insurer has the opportunity to evaluate a claim through procedures such as a medical examination. In pertinent part, section 627.736(7), Florida Statutes (2001), provides:
 

 (a) Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection insurance benefits, such person shall, upon the request of an insurer, submit to mental or physical examination by a physician or physicians.... Personal protection insurers are authorized to include
 
 reasonable
 
 provisions in personal injury protection insurance policies for mental and physical examination of those claiming personal injury protection insurance benefits....
 

 (b) ... If a person
 
 unreasonably
 
 refuses to submit to an examination, the personal injury protection carrier is no longer liable for
 
 subsequent
 
 personal injury protection benefits.
 

 (Emphasis supplied.) If an insured
 
 unreasonably
 
 refuses to submit to a medical examination under this statute, the insurer is no longer liable for
 
 subsequent
 
 PIP benefits.
 
 See De Ferrari v. Gov’t Emps. Ins. Co.,
 
 613 So.2d 101,103 (Fla. 3d DCA 1993). The medical reports and medical examination provision of Masis’s policy tracked the statutory language but the testimonial exam without counsel provision
 
 did not.
 
 Further, the Third District relied on a conditions provision in the personal injury protection section of the policy which is in conflict with the PIP statute and the medical exam provisions of both the PIP statute and the policy.
 

 An affirmative defense is an assertion of facts or law by the defendant that, if true, would avoid the action and the plaintiff is not bound to prove that the affirmative defense does not exist.
 
 See Langford v. McCormick,
 
 552 So.2d 964, 967 (Fla. 1st DCA 1989);
 
 see also Storchwerke, GMBH v. Mr. Thiessen’s Wallpapering Supplies, Inc.,
 
 538 So.2d 1382, 1383 (Fla. 5th DCA 1989);
 
 Black’s Law Dictionary
 
 482 (9th ed. 2009). The defendant has the burden of proving an affirmative defense.
 
 See Hough v. Menses,
 
 95 So.2d 410, 412 (Fla.1957). Specifically, a defending party’s assertion that a plaintiff has failed to satisfy conditions precedent necessary to trigger contractual duties under an existing agreement is generally viewed as
 
 an affirmative defense,
 
 for which the defensive pleader has the burden of pleading and persuasion.
 
 See, e.g., United Auto. Ins. Co. v. Rousseau,
 
 682 So.2d 1229, 1230 (Fla. 4th DCA 1996) (identifying “failure to comply with conditions precedent” as an affirmative defense);
 
 United Auto. Ins. Co. v. Zulma,
 
 661 So.2d 947, 948 (Fla. 4th DCA 1995) (similar);
 
 see also
 
 Fla. R. Civ. P. 1.120(c) (“In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A
 
 *1097
 
 denial of performance or occurrence shall be made specifically and with particularity.”). Furthermore, in
 
 Dorse v. Armstrong World Industries, Inc.,
 
 513 So.2d 1265, 1269 n. 5 (Fla.1987), this Court recognized that the burden of proving each element of an affirmative defense rests on the party that asserts the defense.
 
 See also Hough v. Menses,
 
 95 So.2d 410, 412 (Fla.1957);
 
 Cullum v. Packo,
 
 947 So.2d 583, 536 (Fla. 1st DCA 2006);
 
 Braid Sales & Mktg., Inc. v. R & L Carriers, Inc.,
 
 838 So.2d 590, 592 (Fla. 5th DCA 2003);
 
 Pierson v. State Farm Mut. Auto. Ins. Co.,
 
 621 So.2d 576, 578 (Fla. 2d DCA 1993);
 
 Henderson Dev. Co. v. Gerrits,
 
 340 So.2d 1205, 1206 (Fla. 3d DCA 1976).
 

 Based on the above, under Florida law, the circuit court was correct that United clearly had the burden of pleading and proving its affirmative defense; therefore, it was required to present evidence to the
 
 fact-finder
 
 that Masis unreasonably failed to attend a medical examination without explanation after having received proper notice. Initially, a failure to attend a medical examination is not automatically considered a “refusal” under the statute.
 
 See Lamora v. United Auto. Ins. Co.,
 
 No. 00-031 AP, 8 Fla. L. Weekly Supp. 542, 542 (Fla. 11th Cir. Ct. June 19, 2001) (“Assuming
 
 arguendo
 
 that her failure to appear
 
 could
 
 be determined as a matter of law to be a ‘refusal’ ....”). In addition, there are scenarios in which an insured could reasonably refuse to submit to an examination.
 
 See
 
 § 627.736(7)(b), Fla. Stat. (2001);
 
 Cimino,
 
 754 So.2d at 701-02. Thus, the failure to attend a medical examination may or may not be unreasonable depending upon the evidence presented by the insurer. Additionally the status of both prior and subsequent benefits must be considered.
 
 See Tindall v. Allstate Ins. Co.,
 
 472 So.2d 1291, 1293-94 (Fla. 2d DCA 1985) (summary judgment limited to only
 
 subsequent
 
 benefits). United concedes that it has the burden of proving its affirmative defense, but contends that it did so through the evidence presented during Custer’s case-in-chief. ' United advances an incorrect principle that once it presented evidence of notice and the insured’s failure to attend the medical examination without explanation or objection, the burden of proof allegedly shifted to Custer to demonstrate a reasonable reason for Masis’s failure to attend. Further, even if correct, which it is not, an unreasonable refusal would apply to only
 
 subsequent
 
 benefits, not the facts of this case.
 

 During the examination of United’s litigation adjuster, a letter sent by United on May 10, 2002, to Masis’s attorneys was placed in evidence. The letter notified the attorneys that United was suspending or terminating benefits as of April 11, 2003, based on Masis’s failure to attend the medical examinations scheduled for April 11, 2002, and April 29, 2002. This is the only evidence concerning the failure to attend a medical examination that was in evidence prior to United’s motion for directed verdict after Custer rested. Thus, there was no evidence of a “refusal,” which has been characterized as distinct from evidence that establishes only that an insured failed to attend a medical examination.
 
 See La-mora,
 
 8 Fla. L. Weekly Supp. at 542. In addition, the trial court reviewed, and the record contains, two notices scheduling medical examinations. However, these documents were neither in evidence nor used for identification purposes during trial. Accordingly, the trier of fact was not presented with affirmative evidence that Masis actually received notice of the scheduled medical examinations or that any failure was unreasonable. Consequently, the Third District affirmed the grant of a directed verdict in favor of a defendant based upon an affirmative de
 
 *1098
 
 fense for which the defendant had not presented any evidence whatsoever and with regard to benefits sought in connection with medical expenses incurred and claims submitted prior to the medical examination at issue.
 

 Even if United could prove its affirmative defense through evidence presented during Custer’s case-in-chief, the record does not establish that United presented sufficient evidence to support a directed verdict based on its affirmative defense. As correctly articulated by the circuit court, motions for direct verdict should only be granted when there is no evidence or reasonable inference to support the opposing position.
 
 See Perry, 597
 
 So.2d at 822. Moreover, it is the function of the jury to weigh and evaluate the evidence.
 
 See id.
 
 “Unless the evidence as a whole with all reasonable deductions to be drawn therefrom points to only one possible conclusion, the trial judge is not warranted in withdrawing the case from the jury and substituting her own evaluation of the weight of the evidence.”
 
 Id.
 
 As the movant, United had the burden of demonstrating the absence of any material issue of fact. -See
 
 Lamora, 8
 
 Fla. L. Weekly Supp. 542 (reversing directed verdict that was based solely on the trial court’s determination that an insured’s failure to appear to two scheduled medical examinations constituted an unreasonable refusal as a matter of law). In
 
 Lamora,
 
 the circuit court held that the reasonableness of an insured’s conduct is a question of fact for the jury, not a question of law for the court.
 
 See id.; see also Montero v. Oak Cas. Ins. Co.,
 
 Nos. 99-35 AP & 00-008 AP, 8 Fla. L. Weekly Supp. 601, (Fla. 11th Cir.Ct. July 24, 2001) (holding that where the insured presented substantial evidence from which the jury could have concluded that he had not received notification of the medical examination, and therefore did not unreasonably fail to attend, it was error for “the trial judge to ‘sit as a seventh juror’ and set aside the jury’s verdict”) (quoting
 
 Perry, 597
 
 So.2d at 822). Consequently, the directed verdict was premature because United had not demonstrated the absence of any material issue of fact for the jury (i.e., the reasonableness of the failure or application to
 
 prior
 
 benefits).
 

 Lastly, the Third District held that an insured’s attendance at a medical examination is a condition precedent to the existence of an auto insurance policy that provides PIP benefits and that, consequently, the insured rather than the insurer has the burden of proof on this issue. To support this holding, the district court misapplied clearly distinguishable and in-apposite precedent. For example, the primary case that the Third District relied upon below was
 
 Griffin v. American General Life & Accident Insurance Co., 752
 
 So.2d 621 (Fla. 2d DCA 1999), which involved a
 
 life insurance policy.
 
 The context of life insurance is materially distin guishable from the PIP context because medical examinations are actually conditions precedent to the issuance and existence of life insurance policies. In other words, a life insurer may not enter into an insurance contract with a prospective insured until the insured submits to a medical examination to explore whether there exists any disqualifying pre-existing medical conditions.
 

 In contrast, medical examinations in the context of PIP benefits are not scheduled prior to the existence of a policy or prior to an injury but instead occur only after an insured has sustained an accident and submits notice to an insurer after a policy has been issued and injuries have been sustained. Attendance at a medical examination may be a condition precedent to the
 
 *1099
 
 payment of
 
 subsequent
 
 PIP benefits or, perhaps more accurately, an
 
 “unreasonable
 
 ” failure to attend a requested medical examination may be a condition subsequent that divests the insured’s right to receive further subsequent PIP benefits.
 
 See U.S. Sec. Ins. Co. v. Cimino,
 
 754 So.2d 697, 699, 701-02 (Fla.2000) (indicating that attendance at a PIP medical examination is a condition precedent to the receipt of subsequent PIP benefits and that section 627.736 contemplates “a situation ... where the insured ‘reasonably refuses to submit’ ” to a medical examination). The plain text of section 627.736(7)(b), Florida Statutes (2001), supports the analysis presented in
 
 Cimino:
 
 “If a person
 
 unreasonably
 
 refuses to submit to an examination, the [PIP] carrier is
 
 no longer liable for subsequent
 
 [PIP] benefits.” § 627.736(7)(b), Fla. Stat. (2001) (emphasis supplied). Accordingly, when parties to
 
 an auto insurance policy
 
 dispute attendance at a medical examination, neither the insurer nor the insured is contesting
 
 the policy’s existence,
 
 as the Third District incorrectly stated in its decision below.
 
 See Custer II,
 
 990 So.2d at 635 (quoting and relying upon
 
 Griffin,
 
 752 So.2d at 623). To the contrary, these parties are simply in a dispute with regard to the insured’s continued right to receive
 
 subsequent
 
 PIP benefits
 
 under an existing insurance policy.
 

 In addition,
 
 United Automobile Insurance Co. v. Zulma,
 
 661 So.2d 947 (Fla. 4th DCA 1995), and
 
 De Ferrari v. Government Employees Ins. Co.,
 
 613 So.2d 101 (Fla. 3d DCA 1993), which the Third District relied upon below, do not support the decision in
 
 Custer II.
 
 First, in
 
 Zulma,
 
 the Fourth District stated that attendance at a medical examination is a condition precedent to the receipt of
 
 subsequent
 
 PIP coverage or benefits (not a condition precedent to the policy’s existence) and that pleading the failure to attend a PIP medical examination is
 
 an affirmative defense,
 
 which the defensive pleader must establish if the case progresses to trial.
 
 See
 
 661 So.2d at 948-49. Interestingly, United was also the insurer in
 
 Zulma
 
 and, in that case, this same insurer conceded that under section 627.736(7), Florida Statutes, “[the insurer] would have to prove that [the insured] unreasonably refused to submit to an examination,” which is contrary to the position later adopted by the Third District in
 
 Custer II. See Zulma,
 
 661 So.2d at 948. Second,
 
 De Ferrari
 
 is inapposite because in that decision (a) the district court expressly limited its holding to “uninsured motorist benefits,” and did not address PIP coverage, (b) the decision involved a summary judgment based upon undisputed facts, not a directed verdict entered immediately following the plaintiffs case, and (c) the insurer pled the unreasonable failure to attend a medical examination as
 
 an affirmative defense
 
 (not as a condition precedent to the policy’s existence).
 
 See
 
 613 So.2d at 102-03.
 

 Lastly,
 
 Cimino
 
 does not support the Third District’s assertion in
 
 Custer II
 
 that attendance at a medical examination is a condition precedent to the existence of an auto insurance policy.
 
 See Custer II,
 
 990 So.2d at 635 (quoting and relying upon
 
 Griffin,
 
 752 So.2d at 623). First,
 
 Cimino
 
 primarily established that an insured was entitled to have counsel present and a recording made during a PIP medical exam. Second,
 
 Cimino
 
 established that attendance at a medical examination is a condition precedent to the receipt of only
 
 subsequent
 
 PIP benefits under an existing auto insurance policy or, perhaps more accurately, that the failure to “reasonably” attend a requested medical examination is a condition subsequent, which divests the insured of the right to receive
 
 subsequent
 
 PIP benefits.
 
 See
 
 754 So.2d at 701-02.
 

 
 *1100
 
 In
 
 Tindall v. Allstate Ins. Co.,
 
 472 So.2d 1291, 1293 (Fla. 2d DCA 1985), the district court reasoned that an
 
 unreasonable refusal
 
 of a claimant to submit to an
 
 examination would
 
 relieve the insurer only of
 
 future liability
 
 for PIP benefits,
 
 not
 
 medical expenses already incurred. The court in
 
 Tindall
 
 specifically reversed a summary judgment in favor of an insurer and ordered that the trial court consider the benefits due
 
 before
 
 the failure to appear for a requested medical exam. The failure to attend impacted only medical expenses incurred
 
 after
 
 the date of the requested exam. Thus, contrary to the Third District’s analysis in
 
 Custer II, Tin-dall
 
 and
 
 Cimino
 
 establish under a different statutory provision the principles that (1) because an insured may reasonably refuse to attend a medical examination, a mere allegation or demonstration of simple failure to attend is insufficient to prove that an insured unreasonably refused to submit to the medical examination, and (2) attendance at a medical examination is not a condition precedent to the payment of benefits for prior antecedent PIP benefits under an existing auto insurance policy. More importantly,
 
 Cimino
 
 is completely inapplicable to the circumstances of the decision below because
 
 Cimino
 
 considered the requirements for attendance at a medical examination when the
 

 insured is claiming an entitlement to
 
 continued
 
 benefits and the insurer is questioning the necessity for same. In order to
 
 continue
 
 receiving benefits the insured must comply with the requirements of the insurance contract and section 627.736. The insured is required to comply with a PIP examination in order to
 
 continue to receive the contractual benefits.
 

 752 So.2d at 701 (emphasis supplied). Here, Custer sought reimbursement for medical treatment that had already been completed and claims submitted before United requested a medical examination. Moreover, the medical examination was scheduled for a date long after completion of treatment and submission of all bills. Thus, this is not in any way analogous to the factual circumstances of
 
 Cimino
 
 because the claim in the present case did not seek
 
 continued benefits,
 
 but rather benefits related to previously completed services and claims submitted.
 

 Accordingly, the district court relied on inapposite and distinguishable authority to incorrectly hold that an insured’s attendance at a medical examination is a condition precedent to the existence of an auto insurance policy that provides PIP benefits and that, consequently, the insured rather than the insurer had the burden of proof on this issue. In addition, the evidence does not establish that United proved its affirmative defense, and consequently, United failed to establish that no material fact existed as to its affirmative defense, which was necessary to support a directed verdict on that defense.
 
 [4]
 
 The circuit court in its appellate capacity afforded due process, applied the correct law, did not depart from the essential requirements of the law, and was eminently correct in the decision rendered.
 

 
 *1101
 
 CONCLUSION
 

 Accordingly, we quash the decision below and remand for reinstatement of the circuit court’s decision.
 

 It is so ordered.
 

 PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
 

 POLSTON, J., dissents with an opinion, in which CANADY, C.J., concurs.
 

 POLSTON, J., dissenting.
 

 I would not exercise jurisdiction.
 

 CANADY, C.J., concurs.
 

 [1]
 

 . Although the district court of appeal mentions a letter of September 9, 2002, that letter is related to a purported verbal examination under oath with a prohibition of the presence of counsel for an insured, not a medical exam. The concept of a verbal examination under oath is not relevant due to the posture of this case and positions of the parties. The only argument in this case at the trial court, circuit court, and district court of appeal was based upon medical exams and the failure to attend medical exams. A purported verbal exam under oath without counsel in the PIP context is invalid and more restrictive than permitted by the statutorily mandated coverage and the terms and limitations permitted under the statutory provisions. The prohibition of policy exclusions, limitations, and non-statutory conditions on coverage controlled by statute is clear.
 
 See Flores v. Allstate Ins. Co.,
 
 819 So.2d 740, 745 (Fla.2002) (noting that courts have an obligation to invalidate exclusions on coverage that are inconsistent with the purpose of the statute that mandates the coverage);
 
 Salas v. Liberty Mut. Fire. Ins.
 
 Co., 272 So.2d 1, 5 (Fla.1972) (recognizing that insurance coverage that is a creature of statute is not susceptible to the attempts of the insurer to limit or negate the protection afforded by the law);
 
 Mullis v. State Farm Mut. Auto. Ins. Co.,
 
 252 So.2d 229, 232-34 (Fla.1971) (stating that automobile liability insurance and uninsured motorist coverage obtained to comply with or conform to the law cannot be narrowed by the insurer through exclusions and exceptions contrary to the law);
 
 Diaz-Hernandez v. State Farm Fire & Casualty Co.,
 
 19 So.3d 996, 1000 (Fla. 3d DCA 2009) (concluding that a provision in a policy was invalid because it was against the public policy of the statute);
 
 Vasques v. Mercury Cos. Co.,
 
 947 So.2d 1265, 1269 (Fla. 5th DCA 2007) (stating that restrictions on statutorily mandated coverage must be carefully examined because exclusions that are inconsistent with the purpose of the statute are invalid) (citing
 
 Flores,
 
 819 So.2d at 745). PIP insurance is markedly different from homeowner’s/tenants insurance, property insurance, life insurance, and fire insurance, which
 
 *1090
 
 are not subject to statutory parameters and are simply a matter of contract not subject to statutory requirements.
 

 [2]
 

 . The trial court attempted to apply
 
 Silva,
 
 which is not applicable to these facts.
 
 Silva
 
 addressed a claim based on bills submitted only “subsequent” to a medical examination. Here, it is clear that all bills were incurred and submitted
 
 prior
 
 to the request for a medical examination, the date of such examination, and the date of denial established by United. There were no bills to submit "subsequent”
 
 to that date.
 

 [3]
 

 . In
 
 Haines,
 
 this Court concluded that " 'applied the correct law' is synonymous with ‘observing the essential requirements of law.' " 658 So.2d at 530.
 

 [4]
 

 . The parties advance multiple arguments concerning factual issues and the underlying merits of this action. However, the trial court is in the best position to determine the underlying merits during a new trial.
 
 See Applegate v. Barnett Bank of Tallahassee,
 
 377 So.2d 1150, 1152 (Fla.1979) ("When there are issues of fact the appellant necessarily asks the reviewing court to draw conclusions about the evidence. Without a record of the trial proceedings, the appellate court can not properly resolve the underlying factual issues so as to conclude that the trial court’s judgment is not supported by the evidence or by an alternative theory.”).