[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14111
Non-Argument Calendar

_____

D. C. Docket No. 1:10-cv-21612-CMA

PALADIN SHIPPING CO. LTD.,
a Foreign Corporation,
ANATOLIY CHABAN,
an individual,

Plaintiffs - Appellants,

versus

STAR CAPITAL FUND, LLC,
a Florida Limited Liability Company,
LEON GOLDSTEIN,
an individual,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 26, 2012)

Before CARNES, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Paladin Shipping Company Ltd. and Anatoliy Chaban (together, "Chaban") appeal the district court's final judgment concluding that Chaban was entitled to damages only in the amount of the interest due on his loan to Star Capital Fund, LLC, and Leon Goldstein (together, "Goldstein").[1]

In 2000, Chaban and Goldstein agreed to buy the Chalsi, a 1968-built cargo vessel. They were able to secure a Cambodian flag, and their venture seems to have been relatively successful, although the age of the ship resulted in numerous expensive repairs. In 2008, the ship's classification was withdrawn, and it was quarantined in port, unable to sail.

Around that same time, Chaban loaned Goldstein $1,150,000 for a separate business venture. Soon thereafter, both sides allegedly suffered serious financial hardships as a result of the downturn in the world's economy. On January 25, 2009, the parties agreed in writing (the "January 25 Agreement") that Goldstein would pay back the loan by March 9, 2009, with interest. Goldstein's 50% interest in the Chalsi was presented as collateral. If Goldstein did not pay by

---

[1] We previously remanded the case for the district court to determine whether diversity jurisdiction exists in this case. The district court concluded that jurisdiction does exist. We agree.

2

March 9, 2009, Chaban had the right to sell Goldstein's interest in the ship.[2]

Goldstein did not repay the loan, and on March 4, 2009, he voluntarily transferred his 50% interest in the Chalsi to Chaban.

The parties never agreed on the value of the Chalsi, but they both recognized that the transfer of the ship did not satisfy the full loan amount. In April 2009, Goldstein made a payment of $400,000. He stated that he valued his share of the ship at $750,000, and thus he had completely repaid the loan amount of $1,150,000. Chaban disputed this, claiming that Goldstein's share of the ship was worth somewhere around $200,000.

Chaban brought suit, alleging that Goldstein agreed to pay $1,150,000 but had paid only $400,000 to-date. Goldstein answered by claiming, inter alia, that he had already paid the outstanding balance by tendering his 50% interest in the Chalsi.

As the district court stated, the primary issue to be decided was: "what was the value, in March 2009, of a 50% share of . . . a specially-modified, Romanian-

---

[2]    Both men signed the January 25 Agreement. The translation from Russian was:

I, Leon Goldstein, has borrowed USD 1,150,000 from A.F. Chaban and is to return them with interest on March 9, 2009. Fifty per cent (50%) of my share in the ship "Chalsi" makes a part of this collateral. If the debt is not repaid timely, Chaban shall have the right to sell my share in the ship having preliminarily agreed to the selling price of my share in writing. If the debt is repaid, the Contract shall become null and void.

built, Cambodian-flagged, 1968 Volgo-Don dry-cargo freighter that usually carried scrap metal and coal on the Black Sea, but which at that time was undergoing extensive repairs?"

The district court held a bench trial, where neither party presented solid evidence as to the value of the ship. Chaban claimed at varying times that Goldstein's share was worth $200,000, $250,000, $300,000, or $0. Madeline Kooy, a vessel broker who had never seen the Chalsi, testified as a lay witness[3] and stated that she had previously estimated that the value of Goldstein's share was between $175,000 and $200,000.

The district court issued an order listing its factual and legal conclusions. The court gave no weight to Kooy's valuation of the ship, due to the limited scope of her testimony and limited knowledge of the ship itself. And given Chaban's varying personal valuations of the ship, the court stated that Chaban had completely failed to present any credible evidence as to the value of the Chalsi. Because there had been no evidence on this issue, the court concluded that Chaban had failed to prove that the value of the ship was not equal to $750,000, and thus Chaban had failed to prove any damages resulting from Goldstein's breach of the

---

[3]    The district court ruled that Kooy could proceed only as a lay witness and thus the extent of her testimony was limited. This decision was not appealed.

4

January 25 Agreement, except for the interest on the loan—which Goldstein conceded had not been paid.

Chaban moved for reconsideration, stating that the court had improperly shifted the burden. Chaban claimed that it was Goldstein's burden to prove the value of the ship because that issue went directly to Goldstein's defenses of payment and accord-and-satisfaction. Since the court found that there was no evidence as to the value of the Chalsi, Chaban claimed that Goldstein had failed to prove either defense, and thus Chaban was entitled to the full unpaid amount of $750,000, plus interest. The court denied this motion, stating that it had construed the parties' loan documents as contracts, and contract law required the plaintiff—Chaban—to prove his damages, which he had failed to do.

Chaban maintains on appeal that the district court misunderstood the burdens in this case.

When reviewing the results of a bench trial, we consider the district court's factual conclusions under a clearly erroneous standard and its legal conclusions de novo. Renteria–Marin v. Ag–Mart Produce, Inc., 537 F.3d 1321, 1324 (11th Cir. 2008).

The contract at issue here is a promissory note: an "unconditional written promise, signed by the maker, to pay absolutely and in any event a certain sum of

5

money either to, or to the order of, the bearer or a designated person." Black's Law Dictionary 1162 (9th ed. 2009).

Although the ship was pledged as collateral, Goldstein surrendered it voluntarily as payment, and accordingly the district court analyzed the January 25 Agreement under standard contract law rather than as a UCC Article 9 deficiency action. Defenses like payment and accord-and-satisfaction can be alleged in any breach of contract dispute; they are not limited to secured transactions. See Moore v. Jarvis Enters., Inc., 523 So. 2d 1233, 1234 (Fla. Dist. Ct. App. 1988) ("Accord and satisfaction was properly found to be an avoidance to appellants' breach of contract count . . . ."). Thus, regardless of the terminology used to describe the January 25 Agreement, the point is that Chaban provided evidence showing that Goldstein owed $750,000, and Goldstein claimed that he had already paid the amount due by tendering his interest in the Chalsi.

In other words, as he specifically stated in his answer to Chaban's complaint, Goldstein was alleging the defense of payment. "Payment is an affirmative defense, the burden of proof of which rests upon the defendant." Touchberry v. Nemec, 264 So. 2d 466, 467 (Fla. Dist Ct. App. 1972) (emphasis added). Florida has stated that "the burden of proving each element of an affirmative defense rests on the party that asserts the defense." Custer Med. Ctr. v.

6

United Auto. Ins. Co., 62 So. 3d 1086, 1097 (Fla. 2010); see Click v. Dowd, 135 So. 840, 840 (Fla. 1931) ("The rule is elementary that when the defendant in an action on a promissory note tenders a plea of payment the burden is on him to prove his plea by a preponderance of the evidence."); see also Fed. R. Civ. P. 8(c)(1) (noting that payment is an affirmative defense); Fla. R. Civ. P. 1.110(d) (same).

The district court concluded that the value of the ship went both to Goldstein's affirmative defense of payment and to Chaban's claim for damages, and thus the burden fell on Chaban to prove a value for the ship because this value would determine the damages that Chaban was entitled to receive from Goldstein for the breach-of-contract claim. Because there was no solid evidence as to the value of the ship, the district court concluded that Chaban was entitled to no damages, except for interest on the loan, which both parties agreed was owed.

We disagree with the district court's conclusion for two reasons. First, whenever a defendant asserts payment as an affirmative defense, the amount that the plaintiff is ultimately entitled to recover will always depend on whether (and to what extent) the defendant can establish the defense of payment. Even though Chaban's recoverable amount depended on the value of the Chalsi, this does not mean that Chaban had the burden of proving said value. The value was relevant

7

because it determined the amount of Goldstein's payment; in other words it

determined the extent to which Goldstein's defense of payment would succeed.

The burden of proving this defense remains on the defendant.  The plaintiff does

not have to prove lack of payment.  Jacobs v. Becks, 355 So. 2d 1241, 1243 (Fla.

Dist. Ct. App. 1978) ("There is no requirement that the Plaintiff present evidence

as part of her case in chief that the notes remain unpaid . . . .").[4]

Second, Florida courts have made it clear that a plaintiff satisfies his prima

facie case merely by presenting the valid promise to pay.  "The promissory note is

itself evidence of the existence of the debt and its introduction into evidence is

sufficient to establish a prima facie case.  When it is regularly admitted into

evidence no additional evidence of the present existence of the debt is necessary

upon the case of the plaintiff."  Knauer v. Levy, 115 So. 2d 776, 777 (Fla. Dist. Ct.

App. 1959); see also Crum v. U.S. Fidelity & Guar. Co., 468 So. 2d 1004, 1006

(Fla. Dist. Ct. App. 1985); Touchberry, 264 So. 2d at 467.  Accordingly, under

Florida law, Chaban met his prima facie burden simply by presenting the valid

promissory note for $1,150,000 and claiming that $750,000 remained unpaid.  It

was then Goldstein's burden to prove the defense that he had actually paid the

---

[4]    A purpose of this rule is presumably that someone who borrows money cannot purport to pay with an item of incalculable value, then escape from any further payment because the lender is unable to prove that the value of the item was insufficient to satisfy the entire loan.

8

$750,000 when he tendered his interest in the Chalsi (i.e., by providing evidence to show that his interest in the ship was worth $750,000).

This issue was an affirmative defense under both Florida and Federal law, and it was treated as an affirmative defense by the parties in their pleadings. No amount of recharacterization of the transaction between the parties would change the conclusion that the burden of showing payment always rested with the defendant Goldstein. In other words, "it would appear that the trial court misconceived the applicable law and erroneously placed upon plaintiff-appellant the burden of proving non-payment of the note, rather than correctly placing upon defendant-appellee the burden of proving payment." Touchberry, 264 So. 2d at 467.

We cannot rely on any purported presumption that the fair market value of the ship was equal to the amount of debt that it secured. First, that rule was applied in the context of a "commercially unreasonable" disposal of collateral by the lender—which does not apply in the case sub judice. See Weiner v. Am. Petrofina Mktg., Inc., 482 So. 2d 1362, 1364-65 (Fla. 1986). Second, the parties' own behavior shows that they never intended for the ship to serve as collateral for the entire $1,150,000 loan—which was the outstanding loan value when the ship was offered as collateral.

9

Additionally, there is no way to characterize Goldstein's payments as an accord-and-satisfaction. Chaban immediately challenged Goldstein's claim that his $400,000 payment, in conjunction with the previous surrender of his interest in the Chalsi, meant that the entire $1,150,000 had been satisfied.

Given the district court's misunderstanding of the burdens in this case, and given that Chaban himself seems to have admitted at trial that Goldstein was entitled to some amount of credit for surrendering his interest in the Chalsi,[5] we believe the best course is to remand for the district court to have an opportunity to reconsider its factual conclusions on this issue under the proper legal standards and then recalculate damages.

**VACATED AND REMANDED.**

---

[5]    See June 30 trial tr. at 25.