# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-2345

_____

CHARLES STAMITOLES,

Petitioner,

v.

STATE OF FLORIDA,

Respondent.

_____

Petition for Writ of Certiorari.

April 5, 2019

PER CURIAM.

Charles Stamitoles petitions for second-tier certiorari review from an order of the circuit court summarily affirming his county court judgment and sentence. We deny the petition because it fails to meet the high standard for granting second-tier certiorari review.

The petitioner's case began in the county court and was appealed to the circuit court, which entered a summary affirmance. We have discretionary jurisdiction to review a decision of the circuit court acting in its appellate capacity. Fla. R. App. P. 9.030(b)(2)(B). However, our review on second-tier certiorari is very limited. *See Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 530 (Fla. 1995) ("As a case travels up the judicial ladder, review

should consistently become narrower, not broader."). Where, as here, it is undisputed that the circuit court afforded procedural due process, our review is confined to whether the court's decision "departed from the essential requirements of law." *Balzer v. Ryan*, 44 Fla. L. Weekly D149 (Fla. 1st DCA December 31, 2018) (citing *Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1092 (Fla. 2010)). A departure from the essential requirements of law requires that we find the circuit court "violated a clearly established principle of law resulting in a miscarriage of justice." *Custer*, 62 So. 3d at 1092.

The petitioner has failed to show the circuit court's summary affirmance departed from the essential requirements of law. *See State Farm Auto. Ins. Co. v. CC Chiropractic, LLC,* 245 So. 3d 755, 758-59 (Fla. 4th DCA 2018) (recognizing that even if the county court's decision contained legal errors, "the circuit court's per curiam affirmance was not a violation of a clearly established principle of law resulting in a miscarriage of justice so as to permit our review by second-tier certiorari"). Second-tier certiorari is not a second appeal. *See Custer*, 62 So. 3d at 1093 (emphasizing that "certiorari cannot be used to grant a second appeal to correct the existence of mere legal error"); *State Farm,* 245 So. 3d at 757 n.2 (noting "[a] denial of discretionary second-tier certiorari review should not be construed to mean that we approve of the underlying decisions"). Because the petition failed to meet the high burden for second-tier certiorari review, the petition is DENIED.

WETHERELL, J., and BRASINGTON, MONICA J., ASSOCIATE JUDGE, concur; MAKAR, J., concurs with opinion.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

MAKAR, J., concurring with opinion.

I fully concur and write to explain why the issue presented in this certiorari proceeding presents a close question.

While perusing new vehicles and awaiting delivery of a key for a test drive with his wife and son, Dr. Charles Stamitoles was approached by a sheriff's deputy who had been summoned to the Sandy Sansing BMW car dealership after a sales advisor and credit manager told the deputy that Stamitoles had been put on their "do not sell" list previously and wanted him removed. Stamitoles disobeyed the deputy's request to stay put and fled; the deputy tackled and restrained him in short order. Stamitoles was found guilty by a jury in county court of one count of resisting an officer without violence (no trespass charge was lodged). The trial judge, who thought the dealership's actions were "ridiculous" ("I feel that they set Mr. Stamitoles up to be arrested when they could have simply said, leave."), withheld adjudication and imposed costs. Stamitoles appealed to the circuit court, arguing that the arresting deputy was not engaged in the exercise of a legal duty because no basis for a trespass violation was established. That court affirmed without an opinion.

Stamitoles's petition in this Court asserts that his conviction meets the standard for second-tier certiorari review, which is "whether there has been a departure from the essential requirements of law resulting in a miscarriage of justice." *Haines City Cmty. Dev. v. Heggs,* 658 So. 2d 523 (Fla. 1995); *Combs v. State,* 436 So. 2d 93 (Fla. 1983). This standard applies to district court review of circuit court appellate rulings. For instance, although reevaluating the probative value of evidence is impermissible on second-tier review, "when there is no evidence on a material element of a crime, it is appropriate that certiorari be granted notwithstanding an affirmance of a conviction by the circuit court sitting in its appellate capacity." *Gonzalez v. State*, 443 So. 2d 425, 426–27 (Fla. 2d DCA 1984). In *Gonzalez*, the Second District held that the evidence of a farm labor registration violation "was legally insufficient to sustain Gonzalez' convictions, and, on appeal, he was entitled to have those convictions vacated." *Id.* at 427. Thus, where the "state presents no evidence of a material element of a crime and the defendant is convicted, this would constitute a miscarriage of justice." *Von Goff v. State*, 687 So. 2d 926, 927–28 (Fla. 2d DCA 1997) (discussing *Gonzalez*).

Likewise, in *Von Goff*, the defendant sought review of a circuit court decision affirming his county court conviction for "loitering and prowling" by sitting outside a bathroom at 9pm next to an open convenience store. *Id.* at 927. The arresting officer did not see the defendant doing anything illegal but arrested him after he refused to give his name. *Id.* In vacating the county court conviction, the Second District noted that the "offense of loitering and prowling contains two elements: first the accused must be loitering and prowling in a manner not usual for law-abiding citizens; and second, the loitering and prowling must be under circumstances that threaten the public safety." *Id.* at 928. As to the second element, the Second District held that "assuming that sitting near an open convenience store constitutes loitering and prowling in a manner unusual for law-abiding citizens, there was no evidence introduced at trial indicating that appellant's actions were creating an imminent threat to the safety of persons or property in the area." *Id.* For this reason, the standard for certiorari relief was established and the circuit court's order quashed. *Id.*

Turning to this case, the charge against Stamitoles is that he violated section 843.02, Florida Statutes, which provides, in pertinent part, that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." § 843.02, Fla. Stat. (2018); *see also C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009) (obstruction without violence requires that "the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty."). Stamitoles's argument is that the arresting officer was not "engaged in the lawful execution of a legal duty" because no evidence established that Stamitoles was defying "an order to leave, personally communicated to the offender by the owner of the premises or by an authorized person" as to the dealership property. § 810.09(2)(b), Fla. Stat. (2018). An element of trespass is that "notice not to enter had been given by actual communication to the defendant[.]" *R.C.W. v. State*, 507 So. 2d 700, 701 (Fla. 1st DCA 1987).

4

What evidence exists that an "order to leave" was communicated to Stamitoles? No trespass warning was on file with the sheriff's office, no trespass charge was lodged against Stamitoles arising from his arrest, and no documentary evidence established the existence of a prior "order to leave" as to the dealership property. Instead, the evidence at trial was entirely testimonial: the sales advisor and risk manager testified that they'd had a poor "relationship" with Stamitoles in the past and that he was on their "do not sell" list. The sales advisor testified he spoke to Stamitoles that day and was getting a key for the car the family wanted to inspect when he recalled that Stamitoles was someone the dealership did not want to deal with; he nonetheless did not ask Stamitoles to leave and had an employee tell Stamitoles to "wait" for the key despite knowing that a deputy was en route to eject him. The credit manager said that she'd had three instances when Stamitoles was put on the "do not sell" list. She wanted the officer to ask Stamitoles to leave, and that the officer upon arrival "was going to talk to [Stamitoles] and ask him to leave." On direct, she opaquely said that Stamitoles had "been trespassed from our properties" but provided no details. On cross-examination, Stamitoles's attorney probed further, however, suggesting that the credit manager had met at Stamitoles's office in the past. The credit manager, her memory refreshed, responded by saying that a "deputy trespassed [Stamitoles] from all Sandy Sansing's properties" during that meeting, which has held due to a "dispute" about a vehicle; Stamitoles was put on the "do not sell list" and "trespassed at that time."

Separating the wheat from the chaff, the testimony of the credit manager about the meeting at Stamitoles's office provided the only evidentiary basis to conclude that Stamitoles had notice that he was not legally permitted to be on the premises. If believed, this testimony established that an authorized person, the credit manager, had attended a meeting at Stamitoles's office regarding a vehicle dispute, and that Stamitoles was present and had been "trespassed" from the property at that time with a deputy present. The jury could have disbelieved the credit manager's testimony and believed Stamitoles's denials, but the jury apparently chose to believe the credit manager thereby putting Stamitoles on verbal notice to not return to the dealership.

5

Two final points, both related to how this case ultimately turns on the testimony of one witness, who the jury could have believed or disbelieved. First, it is far better to have documentation of a written trespass order, *R.C.W.*, 507 So. 2d at 701 (upholding trespass conviction where juvenile was given written trespass notice and told not to come onto mall property), because of the potential legal consequences arising from falsely reporting a crime or causing a false arrest, *see, e.g., Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 14 (Fla. 2016) (discussing civil cause of action for reckless, culpable conduct in making mistaken reports to law enforcement); *see also Rivers v. Dillards Dep't Store, Inc.*, 698 So. 2d 1328, 1331 (Fla. 1st DCA 1997) (discussing liability for false arrest in context of detained customers believed to have shoplifted and told to leave or be subject to arrest for trespass), even though a verbal order is legally sufficient. *See Melton v. State*, 546 So. 2d 444, 445 (Fla. 1st DCA 1989) (arresting officer had "substantial reason to believe" that defendant was committing a trespass where manager of Island Bar said "he was having a problem with the [defendant] and that he wanted him barred from the property," and officer had twice warned the defendant to stay away from the property); *see also State v. M.A.D.*, 721 So. 2d 412, 413 (Fla. 3d DCA 1998) (juvenile "was identified by the police as someone which both the police and the store's management had warned on previous occasions not to congregate in front of the store."). Second, the potential pitfalls of litigation could have been avoided if the matter had been handled differently. The dealership could have asked Stamitoles to leave rather than dupe him into waiting for a key and the deputy's arrival; if Stamitoles did not leave, police intervention and perhaps arrest would have been appropriate. Conversely, had Stamitoles not fled from the officer and resisted his overtures, he would have simply been asked to leave without arrest; after all, that's all the credit manager and deputy had asked to be accomplished. These bridges were burned, but lessons can still be learned.

---

Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Petitioner.

Ashley B. Moody, Attorney General, and Quentin Humphrey,

Assistant Attorney General, Tallahassee, for Respondent.