SAWAYA, J.,
dissenting.
This case is a prime example of how a clever litigant can game the legal system and get away with it. The record reveals that appellee Robin Curran willfully and materially breached the insurance policy State Farm issued to her by twice refusing to attend a scheduled compulsory medical examination as required under the policy. Curran breached the policy as part of a scheme she employed to establish a bad faith action against State Farm so she could recover in excess of the policy limits. Her damages far exceeded the $100,000 policy limits, as is evident from the multimillion dollar verdict she received from the jury. Attending the scheduled compulsory medical examination (CME) would have revealed to State Farm the extent of her injuries and risked its pre-trial tender of the policy limits, thus precluding a bad faith action. During the hearing held in March 2008 on the summary judgment motions filed by both parties regarding the effect of Curran’s breach of the policy, the lawyer for State Farm explained to the court the trap in which he found himself and his client:
MR. TURNER: I tell you the problem you’ve got. If somebody’s got legitimate RSD — and say what you will about Joe Uricchio, but he is probably the biggest proponent for RSD. He gives the most seminars that I’ve ever heard on RSD for plaintiffs.
Quite frankly, the plaintiff had already been referred to Joe Uricchio by Dr. Todd Jaffe back in March of 2007 to go. In any event, it didn’t take place.
My concern obviously was a civil remedies notice is sitting out there. They then file a lawsuit when they don’t show up. We requested again, they objected again to the lawsuit. We indicated that we couldn’t get an IME with Uricchio before the civil remedies notice. Therein lies the rub.
The reference in the third sentence in the last paragraph to “objected again to the lawsuit” is an obvious reference to the attempt on the part of State Farm shortly after the suit was filed to obtain an examination of Curran pursuant to a notice for examination under rule 1.360, Florida Rules of Civil Procedure, on November 20, 2007. Incredibly, Curran objected to that examination and actually objected to, among other things, Dr. Uricchio and the location, after she had previously agreed to both prior to her failure to appear at the second scheduled pre-suit examination.
This is how Curran employed her scheme. After Curran was involved in the *811 automobile accident, she settled with the underinsured tortfeasor and sought to recover her UM benefits from State Farm. The policy State Farm issued to Curran contained a CME provision that required:
Any person making claim ... under the no-fault, medical payments, uninsured motor vehicle and death, dismemberment and loss of sight coverages shall ... be examined by physicians chosen and paid by us as often as we reasonably require....
When Curran notified State Farm of her intent to seek UM benefits, State Farm requested that Curran appear for a CME pursuant to the policy provisions, and further requested Curran to contact it so it could schedule the examination. This request prompted a reply from Curran’s attorney that Curran would attend an examination provided State Farm waive its rights to any further examinations. This demand was an obvious attempt to have State Farm waive not only its rights under the CME provisions of the policy, but also its rights under rule 1.360, Florida Rules of Civil Procedure, to obtain a physical examination of Curran in the event suit was filed. Curran’s attorney made it very clear in this reply that he would be filing a Civil Remedies Notice with the Department of Insurance, which is the precursor to a bad faith action. Curran did file the notice. State Farm did not agree with the waiver condition and specifically replied that it knew “of no case law that supports that position.”
A flurry of correspondence went back and forth between the two attorneys, with Curran always demanding that State Farm waive its rights under the policy for any further examinations. State Farm made other attempts to schedule the examination, and each time Curran responded with the waiver demand. That was the only demand that Curran made until the parties finally agreed on the examination date, time, place, and the doctor who would perform the examination. It was at that point that Curran not only demanded the waiver condition, but also came up with numerous other demands that she insisted State Farm agree to in exchange for her attendance at the examination. A few days before the scheduled examination date, Cur-ran filed her suit and failed to show up for the examination.
Judge Lawson argues in his concurring opinion that the conclusion that Curran employed a scheme to establish a bad faith action against State Farm is unsupported by the record. I totally reject that argument. Not only does the evidence in the record that I have previously discussed establish what Curran did, her own lawyer told State Farm that he was going to establish a bad faith action and then set out to do it. In his letter to State Farm dated August 21, 2007, Curran’s lawyer told State Farm that he would be filing a Civil Remedies Notice with the Department of Insurance, which is a prerequisite to a bad faith action under section 624.155, Florida Statutes, and the record reflects that he did file the notice. Curran’s lawyer also revealed in that letter that he would establish his bad faith action by insisting that Curran would not attend the required examination unless State Farm accepted her unreasonable and unacceptable demand that it waive its rights under the CME provisions of the policy. The record further reveals that Curran filed a Proposal For Settlement pursuant to section 768.79, Florida Statutes, and rule 1.442, Florida Rules of Civil Procedure, for $1,000,000, which is ten times the amount of the policy limits, to establish a basis for fees in the bad faith action and the final judgment we review provides that it “specifically reserves jurisdiction to amend this Final Judgment or enter a separate Judgment after the determination of costs, in *812 terest, attorney’s fees and any pending claims for bad faith.” Even the majority opinion recognizes the bad faith action Curran created, acknowledges that the waiver demands she made were improper and unreasonable, and further acknowledges that Curran’s refusals to attend the scheduled examinations constitute a breach of the policy. I cannot conceive of any factual scenario that could more clearly establish a scheme to unfairly manipulate an insurer to set up a bad faith claim, and I certainly do not think that judges should discard common sense when analyzing the evidence and record in any case. In fact, it is evident that at least some in the majority, to their credit, recognize the inherent unfairness of what Curran did and that is why the majority opinion states that “[w]e do not intend this decision to mean that the breach of contract by Cur-ran cannot be considered in the context of any subsequent action for bad faith.”
The concurring opinion also argues that it is not possible to discern from the record whether Dr. Uricchio would have confirmed the extent of Curran’s injuries had Curran attended the examination when scheduled because his report is not in the record. It is true that his report is not in the record, but this argument completely misses the point. The point is that Cur-ran’s failure to attend the examination deprived State Farm of the right under the CME provisions of the policy to find out what Dr. Uricchio would have reported prior to the suit being filed so it could have properly evaluated Curran’s claim.
The concurring opinion further argues that what Curran did is irrelevant. This is simply wrong. As I will subsequently discuss in more detail, it is well settled that a willful and material breach by the insured of an examination requirement in an insurance policy prohibits the insured from recovering the policy benefits. Clearly, the wrongful conduct Curran engaged in to create a bad faith action for herself is relevant to the issue of willfulness and it is relevant to the members of the majority because they raised the specter of a bad faith action in their opinion. Contrary to what the concurring opinion asserts, I am not arguing that any breach of a CME requirement is a material breach that results in a forfeiture of policy benefits. I am saying that the courts of this state have consistently held that willful noncompliance with examination requirements constitutes a material breach of the policy that eliminates the insured’s right to recover under the policy.
When Curran filed her suit after refusing to attend the CME, she not only breached the CME provisions, she also breached the provision in the policy that states:
There is no right of action against us until all terms of this policy have been met....
The CME provision and the no-action provision are included in the policy to give insurance companies like State Farm the right to properly investigate the claim to weed out any false and meritless claims and to pay legitimate claims prior to incurring the expense, time, and effort of a lawsuit. Not only are these valuable rights that help eliminate frivolous and fraudulent claims, they help reduce or eliminate the costs of litigation. These rights are factored into the costs of the insurance and the premiums charged by the insurance company, resulting in reduced costs of insurance and a general savings to the public.
Indeed, Florida law imposes an affirmative duty on insurers to investigate claims made against their policies. See § 626.9891(l)(a), Fla. Stat. (2009) (requiring insurers to establish and maintain a unit within the company to investigate pos *813 sible fraudulent claims by insureds or persons making claims against policies held by insureds). As I will subsequently discuss, the case law clearly establishes that examination requirements in policies have been an effective tool utilized by insurers to investigate claims for a very long time in Florida.
The original panel decision correctly held that because of Curran’s willful and material breach of the examination requirements of the policy, she was not entitled to recover the UM benefits. The en banc majority has rendered an opinion that essentially holds that there is no consequence to Curran for her willful and material breach because she will recover her policy benefits anyway. The holding of the majority rests entirely on its assertion that State Farm did not plead and prove that it was prejudiced by Curran’s breach. The majority further contends that the breach is inconsequential because State Farm had the opportunity to have Curran examined under rule 1.360 after the suit was filed. In order to bolster its holding, the majority suggests that the CME provisions are some sort of condition subsequent and a violation of the policy’s cooperation clause that does require a showing of prejudice by the insurer. Finally, the majority contends that State Farm could have moved to abate the prematurely filed action, and the fact that it did not obviates the breach and establishes its inconsequential nature. I will address each of these issues in the following sections. I will also explain why the majority’s criticism of Goldman v. State Farm Fire General Insurance Co., 660 So.2d 300, 303 (Fla. 4th DCA 1995), review denied, 670 So.2d 938 (Fla.1996), and De Ferrari v. Government Employees Insurance Co., 613 So.2d 101 (Fla. 3d DCA), review denied, 620 So.2d 760 (Fla.1993), is unfounded and based on a misreading of those opinions. I will further explain that if there is a prejudice burden here, the burden was on Curran to show a lack of prejudice.
Before I proceed, it is important to note that the arguments and issues raised by the majority were not raised by the parties in this appeal, and I find it very troubling that State Farm has never had the opportunity to address them.
I. Curran’s Refusal To Attend The CME Is A Willful And Material Breach That Precludes Her Recovery Under The Policy Without A Separate Showing Of Prejudice To State Farm
A. The Florida Cases
In 13 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d, § 196:23 (1999), the authors state that breach of an examination clause is a breach of the policy and bars recovery regardless of whether the examination is a condition precedent to suit or recovery, or is part of a cooperation clause:
While the effect of a breach has historically depended on whether the requirement is a condition precedent to recovery or to suit, or an element of the insured’s duty to cooperate, discussed below, an insured’s failure to comply with a policy condition breaches the policy. Generally, in the absence of a reasonable excuse, when an insured fails to comply with the insurance policy provisions requiring an examination under oath and the production of documents, the breach generally results in forfeiture of coverage, thereby relieving the insurer of its liability to pay, and provides the insurer an absolute defense to an action on the policy.
(Footnotes omitted). This has been the view of the Florida courts for a very long time. The Florida courts focus on the *814 materiality and willfulness of the breach and consider a willful breach of an examination clause to be a material breach that precludes recovery under the policy without resort to a prejudice analysis.[11]
Breach of a CME provision is a material breach of the policy because such examination provisions allow the insurer to investigate a claim to determine whether it is valid and covered under the policy. CMEs, like examinations under oath, play an important part in reducing the incidence of fraudulent and meritless claims. When the insurer is deprived of its right under the examination provisions of a policy to properly investigate a claim, the insurer is prejudiced by the denial of a meaningful opportunity to settle meritorious claims prior to facing suit and by its potential exposure to a bad faith action. In other words, the prejudice to the insurer is the deprivation of its rights under the policy, which includes its right to properly investigate the claim, and no further showing of prejudice is needed after the material breach of the examination provision has been established. In Southern Home Insurance Co. v. Putnal, 57 Fla. 199, 49 So. 922, 932 (1909), the court was faced with insurance provisions much like those in the instant policy:
‘The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of accounts, bills, invoices, and other vouchers or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or [its] representatives, and shall permit extracts and copies thereof to be made.
[[Image here]]
‘No suit or action on this policy, for [t]he recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire.’
The court explained that “ ‘refusal to comply with this condition will preclude the insured from recovering upon the policy, where it provides that no suit can be maintained until after a compliance with such condition.’ ” Id. (quoting with approval Firemen’s Fund Ins. Co. v. Sims, 115 Ga. 939, 42 S.E. 269, 269 (1902) (Syllabus by the Court, paragraph one)). That remains the rule today. In Goldman v. State Farm Fire General Insurance Co., 660 So.2d 300, 303 (Fla. 4th DCA 1995), review denied, 670 So.2d 938 (Fla.1996), the court held, citing to Putnal:
An insured’s refusal to comply with a demand for an examination under oath is a willful and material breach of an insurance contract which precludes the insured from recovery under the policy. Southern Home Ins. Co. v. Putnal, 57 Fla. 199, 49 So. 922, 932 (Fla.1909) (insured’s refusal to comply with policy condition that insured submit to an examination under oath “will preclude the *815 insured from recovering upon the policy, where it provides that no suit can be maintained until after a compliance with such condition”); Stringer v. Fireman's Fund Ins. Co., 622 So.2d 145 (Fla. 3d DCA), review denied, 680 So.2d 1101 (Fla.1993) (the failure to submit to an examination under oath is a material breach of the insurance policy which will reheve the insurer of the obligation to pay under contract).
(Emphasis added). The court explained that the insured did not have to prove prejudice and noted that “[wjhile we conclude that no issue of prejudice is involved, if prejudice were to be considered, the burden would fall on the insured to prove no prejudice to the insurer by the insured’s actions.” Id. at 305 n. 8 (citing Bankers Ins. Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985) (holding that “[t]he burden should be on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts and examine the insured”)). The court also explained the importance of requiring compliance with the examination clause:
A provision in an insurance policy requiring the insured to submit to examination under oath must be complied with, and, if breached, the insurer will be deprived of a valuable right for which it had contracted. 5A J. Appleman & J. Appleman, Insurance Law & Practice § 3549, at 549-50 (1970); American Reliance Ins. Co. v. Riggins, 604 So.2d 535, 535-36 (Fla. 3d DCA 1992) (insured is absolutely required to submit to an examination under oath when requested by an insurer). The purpose of the examination under oath provision was set forth by the United States Supreme Court in Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1884), in which the court stated that the object of the policy provision is to enable the insurer to possess itself of all knowledge and all information as to other sources and means of knowledge, in regards to the facts, material to its rights, to enable it to decide upon its obligations and to protect it against false claims.
Id. at 306 n. 9.
In Shaw v. State Farm Fire & Casualty Co., 37 So.3d 329 (Fla. 5th DCA 2010), like in Putnal, the policy provision is almost identical to the policy provision in the instant case. The Shaw policy provided, “There is no right of action against us ... until all the terms of this policy have been met....” Id. at 338 (Sawaya, J., dissenting). The majority opinion in Shaw states that “[i]t is undisputed that a provision in an insurance policy that requires the insured to submit to an EUO [Examination Under Oath] qualifies as a condition precedent to recovery of policy benefits.” 37 So.3d at 331-32 (citing Starling v. Allstate Floridian Ins. Co., 956 So.2d 511, 513 (Fla. 5th DCA 2007); Fassi v. Am. Fire & Cas. Co., 700 So.2d 51 (Fla. 5th DCA 1997); Goldman).
In Fassi v. American Fire & Casualty Co., 700 So.2d 51 (Fla. 5th DCA 1997), the insureds were requested to appear for an examination under oath and answer questions regarding a suspected arson of the insureds’ premises. The insureds refused to attend, claiming the Fifth Amendment privilege against self incrimination. This court indicated that the insureds were required to attend because they had a duty to cooperate with the insurer regarding its investigation of the claim. However, this court focused on the materiality of the breach as the determining factor, not whether there was a showing of prejudice. This court held:
Likewise, the claimant may not seek to recover fire losses under an insurance policy and, at the same time, refuse to *816 comply with policy requirements to answer questions under oath because criminal charges related to the cause of the fire may be contemplated or pending against him. The examination in this case was not cancelled because the attorney wished to give appellants the opportunity to state their fifth amendment position on the record. Instead, appellants merely failed to appear.
Id. at 52. Judge Griffin concurred specially, stating, “I agree that the repeated unexcused failures of appellants to appear for examination under oath is fatal to their claim.” Id. at 53 (citing Goldman). It is difficult to understand how the repeated unexcused failures to appear for an examination can be fatal to the insured’s claim in Fassi but Curran’s repeated unexcused and willful failures to attend her examinations are not fatal to her claims.
In De Ferrari v. Government Employees Insurance Co., 613 So.2d 101 (Fla. 3d DCA), review denied, 620 So.2d 760 (Fla.1993), the court was confronted with an insured who claimed uninsured motorist benefits and failed to attend her scheduled physical examination pursuant to a CME provision almost identical to the clause in the policy issued to Curran. The court held that the breach of this clause is the breach of a condition precedent to recovery, not the breach of a cooperation clause that requires a separate showing of prejudice. The court concluded that summary judgment in favor of the insurer was appropriate because “prejudice is not at issue when an insurer’s reasonable request for an I.M.E. is refused by an insured.” Id. at 103. In Kazouris v. Government Employees Insurance Co., 706 So.2d 960, 960 (Fla. 5th DCA 1998), this court specifically adopted the De Ferrari analysis to determine “whether the insurer can insist on an independent medical examination when the insured makes a claim under uninsured motorist coverage.”
Similarly, in Stringer v. Fireman’s Fund Insurance Co., 622 So.2d 145 (Fla. 3d DCA), review denied, 630 So.2d 1101 (Fla.1993), the materiality of the breach was the determining factor. In Stringer, the court held:
Dale and Sandra Stringer and Old Cutler Corners, Inc., appeal an adverse final judgment denying insurance coverage. “[TJhe failure to submit to an examination under oath is a material breach of the policy which will relieve the insurer of its liability to pay.” 13A Couch on Insurance 2d (Rev. ed.) § 49A:361, at 760 (1982) (footnote omitted). See also Pervis v. State Farm Fire & Casualty Co., 901 F.2d 944 (11th Cir.), cert. denied, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990).
Id. at 146 (emphasis added).
In Starling v. Allstate Floridian Insurance Co., 956 So.2d 511 (Fla. 5th DCA 2007), the policy required the insured to give the insurer a signed, sworn proof-of-loss form within 60 days after a loss and provided that “[n]o suit or action may be brought against us unless there has been full compliance with all policy terms.” Id. at 513. The trial court held that the insured failed to comply with the 60-day notice requirement and, therefore, breached the insurance contract. It further held that as a result of this breach, the insured was not entitled to recover the policy benefits and that the insurer did not have to prove prejudice resulting from the breach. Id. at 513. This court affirmed and held that it was the materiality of the breach that was the determining factor leading to the conclusion that the insured was not entitled to recover the policy benefits. This court explained:
We take account in interpreting Goldman the concept of materiality as an element of a breach that, as in this case *817 also, justified summary judgment. In other words, a material breach of an insured’s duty to comply with a policy’s condition precedent relieves the insurer of its obligations under the contract. To further explain, the Goldman court affirmed summary judgment after the insureds refused to submit to an EUO following the insurer’s first demand, a scheduled EUO continued by the insureds, their filing suit, and the insurer’s final request six weeks later. The lower court wrote that the plaintiffs’ failure to submit to an EUO prior to filing their lawsuit was a material breach of the insurance contract and relieved the insurer of its obligation to pay under the policy. Goldman, 660 So.2d at 302. Cited in that opinion are several other cases that held a failure to submit to an EUO was a material breach of the policy terms and a condition precedent to the insured’s right to recover. See e.g., Pervis v. State Farm Fire & Gas. Co., 901 F.2d 944 (11th Cir.1990) (affirming summary judgment when insured refused to submit to EUO before his arson trial, or during the four months following completion of the trial, and not until after appeal instituted, constituted material breach of policy); Laine v. Allstate Ins. Co., 355 F.Supp.2d 1303 (N.D.Fla.2005) (granting summary judgment when insured, after repeated requests by insurer, refused to submit to EUO for more than five years after fire he allegedly set); Fassi v. Amer. Fire & Cas. Co., 700 So.2d 51 (Fla. 5th DCA 1997) (affirming summary judgment when insureds refused EUO after insurer provided five opportunities to comply); Stringer v. Fireman’s Fund Ins. Co., 622 So.2d 145 (Fla. 3d DCA 1993).
This reasoning applies equally to a policy’s condition precedent that an insured submit a sworn proof-of-loss. In Ferrer [v. Fidelity & Guar. Ins. Co., 10 F.Supp.2d 1324 (S.D.Fla.1998) ], the insureds never submitted a sworn proof-of-loss. As the court expressed in Haiman v. Federal Insurance Co., 798 So.2d 811 (Fla. 4th DCA 2001):
[A] total failure to comply with policy provisions made a prerequisite to suit under the policy may constitute a breach precluding recovery from the insurer as a matter of law. If, however, the insured cooperates to some degree or provides an explanation for its noncomplianee, a fact question is presented for resolution by a jury.
Id. at 513 (emphasis added). An anomaly in the law has been created by the majority opinion because an insured’s failure to submit a timely proof-of-loss statement results in a loss of policy'benefits while an insured like Curran who twice willfully refuses to attend a scheduled physical examination is allowed to recover hers.
B. Cases From Other Jurisdictions
The majority of courts in other jurisdictions adopt the same view: willful breach of an examination provision is a material breach that bars recovery. In Watson v. National Surety Corp., 468 N.W.2d 448, 450-52 (Iowa 1991), the court held that breach of examination provisions in a policy constitutes a material breach of the policy and bars recovery of benefits. The court explained:
Even though we have not previously interpreted the questioning-under-oath provision of an insurance policy, we have examined related policy conditions. In other cases in which bringing an action was conditioned on an insured’s compliance with certain policy terms, such as giving notice of the loss or cooperating with the insurer, we ruled that these conditions are conditions precedent to an insured’s recovery under the policy. Bruns v. Hartford Accident & Indemn. *818 Co., 407 N.W.2d 576, 579 (Iowa 1987); Western Mut. Ins. Co. v. Baldwin, 258 Iowa 460, 472, 137 N.W.2d 918, 925 (1965).
Other jurisdictions have similarly interpreted the examination-under-oath requirement of an insurance policy. The majority of courts have consistently held that failure to submit to questions under oath is a material breach of the policy terms and a condition precedent to an insured’s recovery under the policy. See, e.g., Pervis v. State Farm Fire & Cas. Co., 901 F.2d 944, 946 (11th Cir.1990); West v. State Farm & Cas. Co., 868 F.2d 348, 349 (9th Cir.1989) (per curiam); Stover v. Aetna Cas. & Sur. Co., 658 F.Supp. 156, 159 (S.D.W.Va.1987); Kisting v. Westchester Fire Ins. Co., 290 F.Supp. 141, 147 (W.D.Wis.1968), aff’d, 416 F.2d 967 (7th Cir.1969); Warrilow v. Superior Court, 142 Ariz. 250, 253, 689 P.2d 193, 196 (Ariz.Ct.App.1984); Standard Mut. Ins. Co. v. Boyd, 452 N.E.2d 1074, 1079 (Ind.Ct.App. 1983); Allison v. State Farm Fire & Cas. Co., 543 So.2d 661, 663 (Miss.1989); Azeem v. Colonial Assurance Co., 96 A.D.2d 123, 124, 468 N.Y.S.2d 248, 249 (1983), aff’d, 62 N.Y.2d 951, 479 N.Y.S.2d 216, 468 N.E.2d 54 (1984); see also 5A J. Appleman & J. Appleman, Insurance Law & Practice § 3549, at 549-50 (1970); 13A G. Couch, Couch on Insurance 2d § 49A:361, at 759 (M. Rhodes rev. ed.1982); 44 Am.Jur.2d Insurance § 1364, at 290-91, § 1366, at 294 (1982). We likewise hold that submission to questions under oath is a condition precedent to an insured’s recovery under an insurance policy.
Id. at 450-52 (emphasis added).
In Spears v. Tennessee Farmers Mutual Insurance Co., 300 S.W.3d 671 (Tenn.Ct.App.2009), the policy provided, “No legal action may be brought against us until there has been full compliance with all the terms of this policy.” Id. at 679 (emphasis added). The court recognized the majority rule and held:
Courts in other jurisdictions have similarly interpreted the examination-under-oath requirement of an insurance policy and have consistently held that failure to submit to questions under oath is a material breach of the policy terms and a condition precedent to an insured’s recovery under the policy. We likewise find that submission to answer questions under oath when requested as provided for in the insurance policy at issue is a condition precedent to an insured’s recovery under that policy.
Id. at 680-81 (citations omitted).
In Krigsman v. Progressive Northern Insurance Co., 151 N.H. 643, 864 A.2d 330, 334-35 (2005), the court held that breach of an examination clause is a material breach that bars recovery under the policy. Citing to Goldman, the court explained:
Although we have not previously addressed this issue, “[i]t is the law in most jurisdictions that the submission to an examination, if the request is reasonable, is strictly construed as a condition precedent to the insurer’s liability.” Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333, 656 N.E.2d 1247, 1250 (1995); see also Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 303 (Fla.Dist.Ct.App.1995), review denied, 670 So.2d 938 (Fla.1996); 13 L. Russ & T. Segalla, Couch on Insurance 3d § 196:22 (1999)....
The policy unambiguously states that the insured must allow Progressive to take an examination under oath and that Progressive may not be sued unless there is full compliance with all of the policy terms, including the EUO provision. A reasonable person in the peti *819 tioner’s position would interpret the policy as requiring compliance with the EUO request prior to filing suit. See Godbout, 150 N.H. at 105, 834 A.2d 360. Thus, we conclude that the language of the petitioner’s policy makes submission to a reasonable request for an EUO a condition precedent to filing suit. See Goldman, 660 So.2d at 303; Mello, 656 N.E.2d at 1249 n. 3 (examining similar policy language).
Courts that construe submission to an EUO as a condition precedent to recovery generally do not require the insurer to prove that it suffered actual prejudice from an insured’s unexcused refusal to submit to an examination. Lorenzo-Martinez v. Safety Ins. Co., 58 Mass. App.Ct. 359, 790 N.E.2d 692, 695-96 (2003). The purpose of an EUO provision is to enable the carrier “to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims.” Claflin v. Commonwealth Insurance Co., 110 U.S. 81, 94-95, 3 S.Ct. 507, 28 L.Ed. 76 (1884). The EUO provides a mechanism for the insurer to corroborate the claim by obtaining information that is primarily or exclusively within the possession of the insured. Lorenzo-Martinez, 790 N.E.2d at 696.
In support of his contention that Progressive must prove actual prejudice, the petitioner relies on Dover Mills Partnership v. Commercial Union Insurance Cos., which held that an insurer must prove it has been prejudiced by an insured’s failure to report a potential claim “as soon as practicable” under an occurrence-based policy. Dover Mills Partnership v. Comm. Union Ins. Cos., 144 N.H. 336, 339, 740 A.2d 1064 (1999). But see Bianco Prof. Assoc, v. Home Ins. Co., 144 N.H. 288, 296, 740 A.2d 1051 (1999) (holding that insurer is not required to prove prejudice due to late notice under a claims-made policy). This holding reflects the view that “[t]he insured should not forfeit the protection he has paid for in the absence of a substantial breach.” Abington Fire Ins. Co. v. Drew, 109 N.H. 464, 466, 254 A.2d 829 (1969). We examine any prejudice to the insurer, as well as the length of the delay and the reasons for it, to determine whether reasonable notice was given in light of the circumstances of the case. Dover Mills Partnership, 144 N.H. at 338, 740 A.2d 1064. Unless the insurer was prejudiced by the late notice, the insured’s failure to timely report the claim is not a material breach of the policy that would excuse the insurer from performance. Id. at 339, 740 A.2d 1064.
The effect of an insured’s breach of an EUO provision differs from the failure to provide timely notice. A delay in receiving notice does not necessarily impair the insurer’s ability to investigate the claim. See id. In contrast, an insured’s refusal to submit to an EUO significantly affects the insurer’s investigation of the claim. See Lorenzo-Martinez, 790 N.E.2d at 696. Here, Progressive requested the EUO in order to resolve the residency issue and make a coverage determination. We will not require Progressive to prove that it has been prejudiced by the petitioner’s refusal to submit to the EUO.
Id. at 647-49, 864 A.2d 330.
In Laine v. Allstate Insurance Co., 355 F.Supp.2d 1303, 1306 (N.D.Fla.2005), the insured filed a claim to recover under his insurance policy for damages to a building caused by fire. Pursuant to an examination clause in the policy, the insurer requested the insured attend an examination *820 under oath so the insurer could investigate the claim. The insured refused to attend based on criminal charges that were pending against him for arson. The court held that the insured’s refusal to attend constituted a breach of the policy that precluded recovery. The court explained why the insurer did not have to make a separate showing of prejudice:
[I]t might be suggested that an insurer should be able to avoid paying a claim based on an insured’s failure to appear for an examination only if the insurer suffers prejudice as a result of the nonappearance. Again, whether this argument would carry the day may be subject to considerable doubt; the law of contracts ordinarily makes materiality of the breach, not prejudice, the point of departure for issues of this type, and Florida intermediate appellate courts have so held, specifically in this context. See, e.g., Stringer, 622 So.2d at 145 (affirming judgment for insurer: the “failure to submit to an examination under oath is a material breach of the policy which will relieve the insurer of its liability to pay,” quoting treatise); Goldman, 660 So.2d 300 (holding no showing of prejudice is required in order for insurer to prevail based on insured’s failure to appear for examination under oath); see also De Ferrari, 613 So.2d 101 (affirming summary judgment for insurer based on insured’s failure to appear for medical examination as required by policy and stating that no showing of prejudice is required).
Id. at 1306 (emphasis added). The court further explained that “the whole point of the examination under oath requirement is to afford the insurer an opportunity investigate whether or not the insured was and is telling the truth. Depriving the insurer of that opportunity is sufficient prejudice, even if, indeed, prejudice is required.” Id. at 1306, n. 2.
Even when the willful breach of a CME provision is considered a breach of a cooperation clause, the courts consider it a material breach that bars recovery. In Hanover Insurance Co. v. Cape Cod Custom Home Theater, Inc., 72 Mass.App.Ct. 331, 891 N.E.2d 703 (2008), for example, the court explained why a willful breach of an examination clause precludes recovery:
Recently, we had occasion to observe that, as a general rule, an insurer may not disclaim coverage by virtue of an insured’s breach of its duty to cooperate absent a showing of prejudice. Boffoli v. Premier Ins. Co., 71 Mass.App.Ct. 212, 216, 880 N.E.2d 826 (2008). We went on to underscore, however, the significance of the examination under oath. “[Bjecause of the importance of weeding out fraud ... we have recognized a limited exception to the prejudice requirement in those cases where there was a wilful and unexcused refusal of the insured to comply with an insurer’s timely request for an examination under oath.” Ibid.
Id. at 707. The court further held that if the breach is willful, the insured is not entitled to belatedly comply. Id.
In Lorenzo-Marbinez v. Safety Insurance Co., 58 Mass.App.Ct. 359, 790 N.E.2d 692 (2003), the court considered the examination clause in a case involving a claim for uninsured motorist benefits. The court similarly explained that a willful breach of an examination requirement constitutes a bar to recovery without a showing of prejudice because of the vital importance of the examination provision in allowing the insurer to properly investigate the claim to weed out false and fraudulent claims. The court noted:
Consequently, an insured’s wilful, unexcused failure to submit to an examination under oath constitutes a breach of *821 the standard automobile insurance contract resulting in forfeiture of coverage for uninsured motorist benefits without proof of actual prejudice resulting to the insurer’s interests. Our ruling appears to comport with the law in other jurisdictions. See 13 Couch, Insurance § 196.23 (3d ed. 1999) (“Generally, in the absence of a reasonable excuse, when an insured fails to comply with the insurance policy provisions requiring an examination under oath ... the breach generally results in forfeiture of coverage, thereby relieving the insurer of its liability to pay, and provides the insurer an absolute defense to an action on the policy”).
Id. at 696. Similarly, in Weissberg v. Royal Insurance Co., 240 A.D.2d 733, 659 N.Y.S.2d 505, (N.Y.App.Div.1997), the court explained that the purpose of a cooperation clause is to enable the insurer to properly investigate the claim in order to protect itself from false and fraudulent claims and that “the insureds’ willful failure to provide material and relevant documents, or to submit to an examination under oath, is a material breach of the policy which bars recovery under the policy.” Id. at 507. In Warrilow v. Superior Court of Arizona, 142 Ariz. 250, 689 P.2d 193 (1984), the court held that an examination under oath clause is “a standard provision usually found in insurance contracts of this nature, and the law is well settled that a failure or refusal of the insured to comply with his obligation of cooperation under such a provision will constitute a bar to any recovery against the insurance company.” Id. at 196.
The approach adopted by the Florida courts and the majority of courts in other jurisdictions requires the courts to base any determination regarding the consequences of the breach on whether the breach was willful and material. The purpose of the CME provision is to allow the insurer the opportunity to properly investigate the claim to determine whether it is a legitimate claim covered under the policy or whether is false or fraudulent. This is why the courts consider a willful breach of an examination clause to be a material breach that bars recovery of the policy proceeds. As the court in Taylor v. Fireman’s Fund Insurance Co., 306 So.2d 638, 645 (Miss.1974), explained, the failure to comply with an examination clause precludes recovery under the policy because “ ‘[t]he object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the Company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to its rights, to enable it to decide upon its obligations, and to protect it against false claims.’ ” Id. at 645 (quoting Standard Ins. Co. v. Anderson, 227 Miss. 397, 86 So.2d 298, 301-02 (1956) (quoting with approval Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1884))).
The majority asserts that the CME clause is a condition subsequent thus triggering a requirement that the insurer show prejudice. That is simply wrong. It is a condition precedent to recovery under the policy. “A condition precedent has been defined as one which calls for the performance of some act, or the happening of some event after a contract is entered into, upon the performance or happening of which its obligation to perform is made to depend.” Alvarez v. Rendon, 953 So.2d 702, 708 (Fla. 5th DCA 2007). The Florida courts and the courts in the majority of other jurisdictions hold that compliance with the examination provisions in a policy, like the CME provisions at issue in the instant case, must be complied with in order to obligate the insurer under the *822 policy to pay the claim. Hence, willful breach of the examination clause and filing suit without compliance with that requirement constitute breaches of conditions precedent to recovery. That is clear from the holdings of the cases just surveyed.
A further showing of prejudice is not required because prejudice to the insurer is established by the fact of the willful breach: the insurer loses its right to properly investigate and evaluate the claim and settle that claim prior to suit to avoid the expense, time, and effort of litigation. As Judge Monaco states in his concurring opinion, prejudice has been established by Curran’s breach of the CME and no-action requirements and State Farm was harmed because it “was denied the opportunity to offer its policy limits in advance of suit, and thus avoid a potential bad-faith claim, it put ... the defendant through a completely unnecessary trial” and established a “bad-faith suit is undoubtedly on the horizon.” One must ask, what more prejudice and harm must an insured inflict on an insurer before she loses her right to recover under the policy?
C. If Prejudice Is An Issue, Curran Had The Burden To Show Lack Of Prejudice To State Farm
The court in Bankers Insurance Co. v. Macias, 475 So.2d 1216 (Fla.1985), was concerned with the failure of the insured to timely file a notice of accident in a PIP case. The issue in Macias was “whether a presumption of prejudice to an insurer arises where an insured fails to give timely notice of an accident to the insurer.” Id. at 1217. In reference to the notice of accident requirement, the court in Macias stated, “The notice requirement entitles the insurer to conduct a timely and adequate investigation of all circumstances surrounding the accident.” Id. at 1217. The court held that “[t]he burden should be on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts and to examine the insured. This rule should apply to claims under a PIP policy just as well as to claims under other policies.” Id at 1218 (emphasis added). The court further held that a cooperation clause analysis of prejudice is inapplicable to instances where the insured fails to give prompt notice of an accident to the insurer. Under Macias, the burden was on Curran to establish that State Farm was not prejudiced by her breach of the CME provisions. Since Curran failed to meet her burden, State Farm is entitled to judgment in its favor. As the court in Goldman stated, “While we conclude that no issue of prejudice is involved, if prejudice were to be considered, the burden would fall on the insured to prove no prejudice to the insurer by the insured’s actions.” 660 So.2d at 305 n. 8 (citing Macias).
The majority contends that the failure to comply with the CME requirements is an affirmative defense that State Farm must plead and prove and, therefore, the burden is on State Farm. State Farm did meet its burden of establishing its affirmative defense. The record reveals that Curran pled in her complaint that she had complied with all conditions precedent, and State Farm answered that allegation with a denial and filed its affirmative defense that she breached the CME provisions of the policy. State Farm did establish that she willfully breached the policy by twice refusing to attend a scheduled examination, and even the majority concedes that Curran breached the policy. Once State Farm established that breach, prejudice is established and, under Macias, the burden shifted to Curran to show that State Farm was not prejudiced. Curran did not attempt to meet this burden because she could not. Curran willfully breached the CME clause by twice refusing to attend a *823 scheduled examination; she deprived State Farm of its contractual right to properly investigate her claim prior to suit; she filed suit in violation of the no-action clause and embroiled State Farm in an unnecessary lawsuit with its attendant expenses; she breached the policy in order to set a bad faith trap for State Farm; and she obstructed State Farm’s efforts to set an examination shortly after the suit was filed. To suggest that Curran could engage in this wrongful conduct and then contend that her conduct did not prejudice State Farm would defy logic and common sense. That is why her only argument to this court in this appeal is that she did not refuse to attend the examinations.

D. The Prejudice Rule Adopted by the Majority and Advanced In Judge Lawson’s Concurring Opinion

The prejudice rule adopted by the majority and advanced in Judge Lawson’s concurring opinion provides in the vernacular of the concurring opinion that the best approach “is a measured one that correlates the damages to the prejudice caused by the breach.” In light of what the record clearly reveals and the way in which the majority applies this rule in the instant case, the majority’s concept of prejudice and damages is a rather strange one. The record clearly reveals that Curran willfully breached the CME clause by twice refusing to attend a scheduled examination and that is not disputed by the majority: she deprived State Farm of its contractual right to properly investigate her claim pri- or to suit; she engaged in a scheme to establish a bad faith action against State Farm; she prematurely filed suit in violation of the no-action clause and embroiled State Farm in an unnecessary lawsuit with its attendant expenses; and she obstructed State Farm’s efforts to set an examination shortly after the suit was filed. It is difficult to conceive of how an insurer could be more prejudiced and damaged. And yet, in applying this new rule to “correlate[ ] the damages to the prejudice” caused by Curran’s breaches, the majority actually calculates those “damages” at zero. Even under fundamental principles of contract law, a breach has consequences and it is error not to award damages to the non-breaching party. MSM Golf, L.L.C. v. Newgent, 853 So.2d 1086 (Fla. 5th DCA 2003); Destiny Constr. Co. v. Martin K. Eby Constr., 662 So.2d 388 (Fla. 5th DCA 1995); Onontario of Fla., Inc. v. R.P. Trucking Co., Inc., 399 So.2d 1117 (Fla. 4th DCA 1981); Muroff v. Dill, 386 So.2d 1281 (Fla. 4th DCA 1980), review, denied, 392 So.2d 1377 (Fla.1981). Application of this new rule in this manner certainly shows to me that this prejudice and damage correlation analysis is untenable, leads to absurd and unjust results, and will be an incentive to others to engage in similar wrongful conduct. If there is to be a prejudice analysis in instances where an insured willfully breaches an examination requirement in a policy, I believe that Macias establishes the better reasoned approach: if the insured fails to establish lack of prejudice to the insurer, the insured is not entitled to recover the policy benefits.
The concurring opinion goes so far as to fault State Farm for relying on established case law in this state like De Ferrari. The opinion further argues that State Farm’s failure to include a specific clause in its policy stating what happens when an insured breaches an examination clause prohibits the very outcome dictated by Put-nal, Goldman, and De Ferrari. I totally reject these arguments. It is well settled that “[cjontracts are made in legal contemplation of the existing applicable law.” Lanza v. Damian Carpentry, Inc., 6 So.3d 674, 676 (Fla. 1st DCA 2009); see also Brandt v. Brandt, 525 So.2d 1017, 1020 (Fla. 4th DCA 1988); S. Crane Rentals, *824 Inc. v. City of Gainesville, 429 So.2d 771, 773 (Fla. 1st DCA 1983). It has been settled law in this state for a very long time that willful breach of an examination clause in an insurance policy by the insured prevents the insured’s recovery under the policy. Putnal; Goldman; and De Ferrari; see also Shaw. Therefore, these decisions establish the result of an insured’s breach of an examination provision in the absence of a specific clause in the policy stating what the result should be. Moreover, lack of a clause in the policy stating the consequence of breach of the CME requirement is an issue that Curran never raised. She never raised this issue because, as is evident from her arguments in the trial court and these appellate proceedings, she and State Farm knew that the case law clearly established the consequence of her breach. Now, the majority wants the Florida Supreme Court to change that case law and establish a new rule. I do not think that State Farm should be faulted because it relied on well settled law in defending this suit, and I do not think that the policy needed a provision to tell Curran what she already knew. Lastly, contrary to what the majority and concurring opinions conclude, I certainly do not think that the lack of such a provision should entitle Curran to willfully breach the CME requirement and suffer no consequence for her wrongdoing.
The concurring opinion argues that because State Farm did not admit liability after the suit was filed and did not schedule the examination until one day before the expiration of Curran’s demand for policy limits, it is conjecture to assert that State Farm would have tendered the policy if it had had the opportunity to properly verify Curran’s claim. This argument misses the point entirely and fails to apprehend the consequences of what Curran did. First, State Farm is not required to schedule the examination within a time limit for a settlement demand set by Cur-ran. Second, Curran’s conduct ensured that State Farm would not have the choice to pay the claim prior to suit and avoid the costs of litigation and the exposure to a bad faith action. The fact that State Farm never conceded liability of the tortfeasor after Curran prematurely filed her suit has nothing to do with this issue. The record reveals that even after the suit was filed Curran obstructed State Farm’s efforts to have Curran examined and when State Farm finally did get the opportunity to have her examined, the time limitations under the Civil Remedies Notice had long expired and Curran had established the predicate for her bad faith action. It makes no sense to suggest that at that point State Farm would admit liability and concede its exposure to an excess judgment via a bad faith action, and it certainly makes no sense to suggest that State Farm would initially answer the suit with an admission of liability without knowing whether the claim is valid and compensa-ble under the policy.
The concurring opinion labels State Farm’s exposure to a bad faith action “hypothetical prejudice.” Once again this argument completely misses the point. First, State Farm had the right to properly investigate the claim under the CME provisions of the policy so it could avoid exposure to a bad faith claim. Curran took that right away from State Farm and created a right of action by her conduct that otherwise would not have existed. Second, when the predicate is laid for a bad faith action, it affects the conduct of the insurer in terms of paying the claim and settling the suit once it is able to properly investigate the claim because it gives the insured more leverage to insist on settlement in excess of the policy limits. Hence Curran’s Proposal For Settlement pursuant to section 768.79, Florida *825 Statutes, and rule 1.442, Florida Rules of Civil Procedure, for ten times the amount of the policy limits. I would also note that the trial court considered it more than “hypothetical” because the final judgment provides that the trial court reserved jurisdiction to enter judgment after the determination of “attorney’s fees and any pending claims for bad faith.” While the concurring opinion may label exposure to a bad faith action as “hypothetical prejudice,” I do not think that State Farm considers it “hypothetical prejudice” and I hardly think there is any insurer that would.
The concurring opinion misreads the decision in Custer Medical Center v. United Automobile Insurance Co., 62 So.3d 1086 (Fla.2010). In that case, the court was concerned with a PIP statute found in section 627.736(4)(b) that states PIP payments for bills submitted become overdue after 30 days. The requested examination in Custer was not scheduled until long after this period had expired and the bills were overdue. The PIP statute further provides that refusal to attend an examination eliminates the insurer’s liability “for subsequent ... benefits.” § 627.736(7)(b), Fla. Stat. (2001). The court simply held that an examination refusal eliminates the payment of subsequent benefits, not benefits that are overdue prior to the scheduled examination. Uninsured motorist payments are not due until a court renders a judgment saying they are due and, therefore, the request for examination is made long before trial and the rendering of the judgment. Hence, under Custer, compliance with a CME provision in a policy is a condition precedent to recovery of uninsured motorist benefits and a condition precedent to recovery of subsequent PIP benefits.
Finally, the concurring opinion argues that breach of the no-action provision of the policy was not an issue raised in the trial court proceedings. I believe it is ironic that the concurring opinion would raise that argument in light of the fact that none of the issues and arguments relied on by the majority to arrive at its decision were raised in the trial court or in these appellate proceedings. My dissent simply replies to the many issues and arguments raised for the first time by the majority.
II. Curran’s Subsequent Examination After The Suit Was Filed Pursuant To Rule 1.360 Does Not Obviate Or Cure The Breach Or Render The Breach Inconsequential
The majority contends that after the suit was filed, Curran offered to attend a CME prior to the expiration of the sixty-day, bad faith notice provision and State Farm did not take her up on that offer. The majority further contends that this either obviated the breach or rendered it inconsequential. However, that is not what Cur-ran did. After suit was filed, she notified State Farm to “utilize the appropriate means for requesting a CME of Ms. Cur-ran available under the Florida Rules of Civil Procedure....” The majority asserts that State Farm declined that offer and deliberately “deferred the opportunity to obtain a post-suit CME until the coverage issue was determined.”
The majority is wrong for several reasons. First, although Curran advised State Farm after the suit was filed that she was willing to attend an IME under the rule, as the majority recognizes, Cur-ran made it clear that she would do so only if State Farm agreed to all of her demands, including the waiver demand.[12] *826 Second, State Farm attempted to obtain an examination of Curran long before the coverage issue was determined. Shortly after the suit was filed, State Farm filed a Request For Physical Examination pursuant to rule 1.360, seeking to have Curran examined on November 20, 2007, by the same doctor at the same location Curran had previously agreed to. Incredibly, Cur-ran filed an objection wherein she actually objected to, among other things, the doctor and the location of the examination. The hearing on the coverage issue raised in the motions for summary judgment was held several months later on March 18, 2008. When State Farm finally did have Curran examined, the sixty-day window under section 624.155 had expired and State Farm had lost the option to tender the policy limits to avoid a bad faith action. See Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 753 So.2d 1278, 1282 (Fla.2000) (“ ‘The sixty-day window is designed to be a cure period that will encourage payment of the underlying claim, and avoid unnecessary bad faith litigation.’ ” (quoting with approval Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 952 F.Supp. 773, 778 (M.D.Fla. 1996))).
Moreover, the record reveals that after the suit was filed, State Farm’s lawyer advised Curran’s lawyer that State Farm could not schedule an examination with Dr. Uricchio prior to the expiration of the sixty-day window period. Hence, after she filed her suit and refused to attend the second scheduled CME, Curran knew that State Farm could not timely reschedule Dr. Uricchio and that the trap had been sprung. The assertion that State Farm had deliberately waited until after the coverage issue to attempt to obtain an examination is not only wrong, it is pointless and irrelevant.
Any litigant has the right to seek an IME under the rule after suit is filed. The CME provision in the policy is a contract right that provides the insurer the ability to investigate the claim prior to suit to weed out fraudulent and meritless claims. To hold as the majority does, that an insured can breach the CME provisions as Curran did on two occasions and then have that breach obviated or rendered inconsequential by virtue of a rule of civil procedure, reduces the insurer’s rights under the CME provisions of the contract to nothing more than meaningless words on a useless piece of paper. Not only does the majority’s holding essentially erase CME provisions from insurance policies, it is an open invitation to aberrant insureds to violate CME provisions and the rights of insurers that bargained for them and adjusted their premiums in reliance on them. I believe this is profoundly wrong.
III. Breach Of The CME Provision Is Not A Breach Of The Cooperation Clause And A CME Is Not A Condition Subsequent
A condition subsequent has been defined as a future event upon the happen *827 ing of which the agreement or obligations of the parties would be no longer binding....
... The term “condition subsequent,” as normally used in contracts in contrast to “condition precedent,” should mean an event which occurs subsequent to a duty of immediate performance, that is, a condition which divests a duty of immediate performance of a contract after it has once accrued and become absolute. True conditions subsequent are very rare in the law of contracts.
IB Richard A. Lord, Williston on Contracts § 38:9 (4th ed.2000) (footnotes omitted); see also Seitter v. Riverside Acad., 144 Fla. 69, 197 So. 764, 765 (1940) (“ ‘A condition subsequent of a contract is one which follows the performance of the contract.’ ” (quoting Nw. Nat’l Life Ins. Co. v. Ward, 56 Okla. 188, 155 P. 524, 526 (Okla.1915))).
Conditions subsequent in insurance policies involve cooperation clause provisions. In Bankers Insurance Co. v. Macias, 475 So.2d 1216, 1217 (Fla.1985), the court stated, “The cooperation requirement ... arises to prevent fraud and collusion in proceedings to determine liability once notice has been given.” Id. at 1217; 16 Richard A. Lord, Williston on Contracts § 49:106 (4th ed. 2000) (“A standard clause in casualty insurance policies provides that the insured’s right to indemnification depends on the insured cooperating with the insurer in defending claims. The purpose of a cooperation clause is to require that the insured cooperate in good faith with the insurance company in the defense of claims, preserving the insurer’s right to adequately prepare a defense, and limiting the possibility of fraud or collusion between the insured and the claimant.”).
When a cooperation clause is involved, the insurer has undertaken the defense of a liability claim on behalf of the tortfea-sor/insured and is entitled to the subsequent cooperation of the insured in defending that claim. In other words, once the insurer undertakes its duty of defense, “[t]he insured has the reciprocal obligation to allow the insurer to control the defense and to cooperate with the insurer.” Doe ex rel. Doe v. Allstate Ins. Co., 653 So.2d 371, 374 (Fla.1995). Hence, the insurer becomes the fiduciary of the insured in terms of handling the litigation and defending the insured against the claims of the injured victim. In Eastern Air Lines, Inc. v. U.S. Aviation Underwriters, Inc., 716 So.2d 340, 343 (Fla. 3d DCA 1998), the court explained, “The cooperation requirement applies in Florida only when the insured and the insurer are in a fiduciary relationship; the insurer has the duty to operate in good faith, and the insured ‘has the reciprocal obligation to allow the insurer to control the defense and to cooperate with the insurer.’ ” Id. at 343 (quoting Doe, 653 So.2d at 374).
Therefore, under the cooperation provisions of an insurance policy, once the insurer undertakes the duty to defend the insured, the insured is required to assist the insurer in that defense. If the insured breaches the cooperation provisions of the policy, the insurer is obligated to show that the breach prejudiced it in order to successfully refuse any further defense of the action and/or payment of benefits to the injured victim because prejudice does not necessarily occur from the fact of the breach, especially in instances where the insured makes valid attempts to cooperate.
Here, the suit is an uninsured motorist claim where the insurance company steps into the shoes of the tortfeasor and takes on an adversarial role against its insured. State Farm Mut. Auto. Ins. Co. v. Revuelta, 901 So.2d 377 (Fla. 3d DCA 2005). In this instance, there is no fiduciary relationship between the insurer and the insured *828 because the insurer is not defending the insured against the claims of another; rather, the insurer is defending itself against the claims of the insured. See Eastern Airlines. The insured is burdened with proving all of the elements of the cause of action it has against the tort-feasor and the insurer may raise defenses that would have been available to the tort-feasor. Thus, there is no duty on the part of the insured to cooperate in the defense of a lawsuit the insured brings against the insurer because they are in an adversarial relationship rather than a fiduciary relationship. Hence, Curran’s breach of the CME provision cannot be a breach of the cooperation clause triggering a separate prejudice analysis.[13]
Moreover the policy issued to Curran does have a cooperation clause and the CME provisions, which are found in a separately numbéred paragraph, are not included in that clause. If the parties had intended the CME provisions to be included in the cooperation clause, they certainly could have written the policy to make that inclusion, but they did not. That can only be accomplished now by judicial rewriting of the policy, which is prohibited. N. Am. Van Lines v. Collyer, 616 So.2d 177, 179 (Fla. 5th DCA 1993) (“A court is not empowered to rewrite a clear and unambiguous provision, nor should it attempt to make an otherwise valid contract more reasonable for one of the parties.”).
IV. The Majority’s Criticism Of The Decisions In Goldman And De Ferrari Are Based On The Majority’s Misreading Of Those Opinions
I disagree with the majority’s reading of the cases relied upon by State Farm and cited in the original panel opinion. The majority primarily argues that they were decided based on the PIP provision in *829 section 627.736(7)(b), which states that failure to attend a physical or mental examination may prevent further payment of PIP benefits. The majority levels this criticism against De Ferrari v. Government Employees Insurance Co., 618 So.2d 101 (Fla. 3d DCA), review denied, 620 So.2d 760 (Fla.1993). The court in that case specifically stated that it was a case involving an uninsured motorist claim. The discussion about the PIP statute was background information explaining the insured’s counsel’s claim that the provisions in the PIP statute regarding the doctor’s qualifications should be looked to in determining the doctor’s qualifications in that case. The court does quote the PIP statute in a footnote to explain the attorney’s contention, and conspicuously absent from that quote is the provision that failure to attend an examination may deprive the insured of further benefits. It is clear that the court in De Ferrari did not decide the case based on the PIP statute, but rather based its decision on the terms of the policy. The pertinent policy language is quoted in the opinion; it states: “The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require.” Id. at 102. The court held that the failure to attend an IME was a breach of a condition precedent to coverage, citing to Orozco v. State Farm Mutual Automobile Insurance Co., 360 F.Supp. 223 (S.D.Fla.1972), affirmed, 480 F.2d 923 (5th Cir.1973), which is a case involving a claim for uninsured motorists benefits. De Ferrari does discuss the insured’s analogy to breach of cooperation clause cases, but rejected that argument and the prejudice requirement. 613 So.2d at 103. The case of Griffin v. Stonewall Insurance Co., 346 So.2d 97 (Fla. 3d DCA 1977), which is cited in the De Ferrari opinion, is a PIP case, but the 1975 PIP statute at issue in Griffin did not contain the forfeiture of benefits clause — that clause was not written into the statute until 1976.[14] Moreover, the De Ferrari court also cited to Orozco, which is an uninsured motorist case. The other cases cited, Allstate Insurance Co. v. Graham, 541 So.2d 160 (Fla. 2d DCA 1989), and Tindall v. Allstate Insurance Co., 472 So.2d 1291 (Fla. 2d DCA 1985), review denied, 484 So.2d 10 (Fla.1986), are PIP cases, but it is clear that the court did not decide De Ferrari based on the PIP statute, but on the provisions of the policy; it expressly stated, “Considering insured’s actions and the clear language of the instant policy, we conclude that the insurer was entitled to summary judgment.” 613 So.2d at 103.
I do not think the court in Custer Medical Center v. United Automobile Insurance Co., 62 So.3d 1086 (Fla.2010), squarely called the decision in De Ferrari into question as the majority contends. To the contrary, I think the court in Custer essentially reaffirmed the application of De Ferrari to uninsured motorist cases. Custer involved a PIP case and the forfeiture provisions in the PIP statute. The court in Custer simply stated that De Ferrari is inapposite because “the district court expressly limited its holding to ‘uninsured motorist benefits,’ and did not address PIP coverage....” Id. at 1099. The court also stated that the insurer in De Ferrari, as *830 State Farm did in the instant case, “pled the unreasonable failure to attend a medical examination as an affirmative defense (not as a condition precedent to the policy’s existence).” Id. If the court in Custer meant to question the viability of De Ferrari, it clearly would have said so and would not have cited and discussed De Ferrari in the manner that it did.
The decision in Goldman v. State Farm General Fire Insurance Co., 660 So.2d 300 (Fla. 4th DCA 1995), review denied, 670 So.2d 938 (Fla.1996), also was not decided based on the PIP statute or a PIP analysis. It is also clear that Goldman did not base its decision on a prejudice analysis, as the majority erroneously contends. The court in Goldman made it clear that prejudice was not an issue and that even if prejudice were to be considered, the burden would be on the insured to show a lack of prejudice, citing Macias.
The majority says it is skeptical of Goldman because it “is wedged between two conflicting decisions,” Wapnick v. State Farm Mutual Automobile Insurance Co., 54 So.3d 1065, 1067 (Fla. 4th DCA 2011), and Leasing Service Corp. v. American Motorists Insurance Co., 496 So.2d 847 (Fla. 4th DCA1986), review denied, 508 So.2d 13 (Fla.1987). Those decisions do not conflict with Goldman. In Wapnick, the insured filed a declaratory relief action to determine whether he was obligated to attend the requested examination in a particular county. That was the only issue the Fourth District Court considered in Wapnick. In Goldman, the insured filed a breach of contract action against the insurer seeking the policy proceeds in breach of both the examination clause and the no-action clause in the policy. The court in Wapnick simply held that the insured was obligated to attend the examination in the county designated by the insurer and that he should be given the opportunity do so before the coverage issue was decided. I do not think that Wapnick is in conflict with Goldman.
In Leasing Services, although the provisions of the policy are not quoted in the opinion, the court held that the particular examination requirement was a violation of the cooperation clause and therefore prejudice was an issue. The court in Goldman made it clear that the breach was a violation of the examination clause and the no-action clause. Not only is Leasing Services not in conflict with Goldman, it is not in conflict with the instant case because the examination clause in the policy State Farm issued to Curran is not included in the provisions of the cooperation clause. I do not think that the decisions in Wapnick and Leasing Services are even analogous to Goldman or the instant case.
Finally, Goldman is one of the leading cases on breach of examination clauses and has been cited numerous times by courts in Florida and other states. Although there may be some judges on this court that view Goldman with skepticism, the vast majority of judges in this state, and others, do not.
V. Abatement Of The Suit
The majority states that State Farm could have asked for an abatement of Cur-ran’s suit. I really do not think this is relevant to the issues in this case. In any event, State Farm had worked in good faith to set the examinations, and Curran refused to attend both scheduled examinations. State Farm warned her of the consequences of her breach, and she refused to attend and filed her lawsuit anyway. The majority’s assertion literally begs the question how many times must State Farm make the request and how many times must Curran refuse to attend before State Farm is entitled to invoke its rights under the contract? Once Curran persisted in *831 her refusals and after she filed her suit, I do not think State Farm was obligated to do anything more. Indeed, that is exactly what the courts hold. In Perms v. State Farm Fire & Casualty Co., 901 F.2d 944, 948 (11th Cir.), cert. denied, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 218 (1990), the court held:
State Farm had no obligation to repeat its request for an examination after appellant breached the contract, and appellant’s offer to be examined, as expressed on appeal, comes too late to be considered. Under the circumstances of this case, there is no principle that excuses Pervis’ refusal to submit to an examination under oath such that he should be permitted to pursue his action against State Farm.
Id. at 948; see also Wright v. Life Ins. Co. of Georgia, 762 So.2d 992 (Fla. 4th DCA 2000) (holding that it is the responsibility of the insured who breached the policy to move to abate or dismiss). Once Curran filed her lawsuit, State Farm was denied its rights under the CME clause and the no-action clause. At that point, the damage had been done, and it is clear that State Farm was not obligated to do anything more than invoke its rights under the policy. I do not think State Farm should be faulted for consistently invoking its contract rights against a party who has consistently violated those rights.
Moreover, if Curran wanted an opportunity to belatedly comply, she should be the one to dismiss her lawsuit. Curran is the one who breached the policy provisions and she is the one who wrongly filed the suit; accordingly, it should be her responsibility to resolve those matters. Implying that State Farm should have done it for her sets a very bad precedent that will be viewed as an invitation to other insureds to violate examination and no-action clauses and improperly sue the insurer. Under the majority’s view, if the insurer does not have the improperly filed action abated, the insured will get the policy benefits; and if the insurer does seek and obtain the abatement, the insured may belatedly comply and get the policy benefits. Either way, aberrant insureds will suffer no consequence for their wrongful conduct.

Conclusion

I find it very troubling that State Farm has never had the opportunity to address the issues and arguments raised in the majority opinion. The only issue raised by the parties and addressed by them in the trial court and in these proceedings is whether Curran refused to attend the scheduled examinations.
I also find it very troubling that the majority opinion concludes that Curran’s breaches are inconsequential. What the majority is actually saying is that the rights State Farm had under the contract are of little consequence because they may in essence be trumped by a rule of civil procedure and an abatement procedure that Curran never even attempted to utilize. State Farm came to this court seeking its rights under the policy and it received, instead, a ruling that renders those rights nothing but meaningless words on a useless piece of paper.
When Curran entered into her contract of insurance with State Farm, she specifically agreed to be examined by physicians chosen by State Farm as often as it may reasonably require. She also agreed that she would not file suit against State Farm until she complied with that requirement. She willfully and materially breached both agreements because she was not interested in obtaining what she bargained for under the policy. She had her eye on a much bigger prize: a bad faith action against State Farm and the chance to recover more than any entitlement she had under her policy.
*832 What I find remarkable about the majority opinion is its conclusion that any prejudice to State Farm is inconsequential when it is clear that Curran’s willful breaches of the policy prevented State Farm from properly investigating her claim, denied it the right to settle the case prior to suit, put State Farm through a completely unnecessary trial and appeal, and now places State Farm in the position of facing an inevitable bad-faith action. That is more than sufficient harm and prejudice to an insurer to cause an insured to lose her right to recover under the policy, and that is why the courts in Florida and elsewhere adopt the view that breach of an examination clause precludes the right to recover under the policy without any further showing of prejudice. “[I]t is just as reprehensible for an insured to fail to deal fairly with the insurer as it is for the insurer not to deal fairly with the insured.... [A]n insured[ ] cannot manipulate the law to create a sword for bad faith damages.” Blue Diamond, Inc. v. Liberty Mut. Ins. Co., 21 F.Supp.2d 631, 637 (S.D.Miss.1998).
In any event, if prejudice is an issue, once the breach of the examination requirement was established, pursuant to Macias, the burden was on Curran to establish a lack of prejudice, and it is clear based on the harm she caused State Farm that she could not meet that burden. That is obviously why she did not raise that argument in these proceedings. I believe that the prejudice standard adopted in Macias is by far the better reasoned approach when compared to the new prejudice rule adopted by the majority. Under Macias, Curran should be denied recovery because she did not and could not meet her burden of establishing lack of prejudice to State Farm.
Perhaps some may conclude that the blame for the wrongful conduct lies with Curran’s lawyer. However, as a party to the insurance contract, Curran knew or should have known that the contract specifically obligated her to attend the scheduled examinations and it is difficult to imagine that her lawyer did not consult with her about her scheduled examination appointments. In any event, regardless of what Curran knew or should have known, she hired the lawyer and placed him in the position to do what he did and she is ultimately responsible for his actions. Therefore, if Curran believes that someone other than herself is at fault, her remedy is against her lawyer, not State Farm.
Litigation is not a game of tricks and traps where clever litigants and their lawyers break contractual promises to achieve an unjust victory against an opponent intent on complying with its contractual promises. That sort of gamesmanship is anathema to all involved in the legal system who seek the truth by means of rules promulgated to achieve justice through fairness. When aberrant litigants and their lawyers get away with the spoils of that type of victory, it cheapens the currency of those rules, gives encouragement to others to do the same, and lends credence to the cynics who say that such practice is endemic to the legal system. Here, the majority acknowledges the bad faith action Curran has created for herself and so the majority makes it a point to say that its decision does not mean that Cur-ran’s wrongful conduct “cannot be considered in the context of any subsequent action for bad faith.” Despite the majority’s acknowledgment of the inevitable bad faith action that will soon follow and the majority’s recognition that what Curran did was wrong, rather than condemn her conduct, the majority declares it inconsequential, orders that State Farm pay her attorney’s fees and awards her full recovery under the policy. The final result of the majority’s ruling is that the only party that will *833 fully and materially breached the policy walks away with the policy limits of $100,000 and a chance to litigate a bad faith claim, her lawyer walks away with his fees fully paid, and the party that foots the bill for their wrongful conduct is State Farm, who is the only party that tried to fulfill its commitments and exercise its rights under the policy. This is the sort of unjust outcome that the decisions in Goldman and De Ferrari attempt to prevent by holding wrongdoers who willfully and materially breach insurance contracts accountable for their conduct. Even under Macias, Curran failed to meet her burden of establishing that State Farm was not prejudiced by her wrongful conduct. I firmly believe that those decisions dictate the proper outcome here. I also believe that it is time to put a stop to this sort of gamesmanship in legal proceedings.

. What I find very troubling about the majority opinion is that it does not consider the breach of an examination clause to be a material breach, when the courts have repeatedly held that it is. Remarkably, the majority considers Curran’s willful breach analogous to inconsequential breaches such as the failure to report an accident within 24 hours or to deliver suit papers at once. To minimize what Curran did in this case by employing that kind of analogous reasoning eviscerates the rights of insurance companies to properly investigate claims and encourages other aberrant claimants to engage in the same type of conduct.

. The majority asserts that a hearing under rule 1.360 allows the trial court to determine *826 the conditions under which the IME will be taken. What the majority is actually contending is that the trial court could determine, when ordering an IME under the rule, the propriety of the provision in the CME clause that allows the insurer to request CMEs as often as it may reasonably require. This provision is inserted in policies to allow further examinations of the insured in instances where the doctor conducting the first examination concludes that further examinations, for example by other doctors that specialize in specific areas of medicine, are necessary to accurately determine the injuries and their cause. Certainly courts may determine whether a second or third request for examination is reasonable or necessary. However, to suggest that the trial court could eliminate that provision from the contract when ordering the first IME under rule 1.360 suggests improper rewriting of the contract by the court that is prohibited.

. The majority opinion quotes from Custer Medical Center v. United Automobile Insurance Co., 62 So.3d 1086 (Fla.2010), and asserts that the court held that "[a] CME provision is a 'condition subsequent' the nonoccurrence of which is an affirmative defense that the insurer has the burden to plead and prove.” That is not what the Custer court said or meant. The court in Custer discussed the forfeiture provisions in the PIP statute, which provide that "[i]f a person unreasonably refuses to submit to an examination, the personal injury protection carrier is no longer liable for subsequent personal injury protection benefits.” Id. at 1096 (emphasis in original) (quoting § 627.736(7)(b), Fla. Stat. (2001)). The court explained that this statutory requirement is not a condition precedent to the existence of the policy; rather, it is a condition precedent to the recovery of subsequent benefits under the policy. The court further explained that breach of the examination requirement did not eliminate the right of the insured to receive payments the insured was entitled to prior to the breach. The court stated that its prior decision in U.S. Security Insurance Co. v. Cimino, 754 So.2d 697 (Fla.2000), correctly held that "attendance at a PIP medical examination is a condition precedent to the receipt of subsequent PIP benefits....” Custer, 62 So.3d at 1099. The court further explained that "when the parties ... dispute attendance at a medical examination, neither ... is contesting the policy's existence...." Id. (emphasis in original). Rather, the parties "are simply in a dispute with regard to the insured’s continued right to receive subsequent PIP benefits under an existing insurance policy." Id. (emphasis in original). The discussion referred to by the majority related solely to the specific provisions of the PIP statute, which are conditions precedent to recovery under the policy. In any event, the discussion in Custer does not pertain to contractual provisions in a policy similar to those at issue in the instant case, and to attempt to extend that discussion to contractual provisions is an extraordinary stretch. I, therefore, totally reject the notion espoused by the majority that Custer holds that attendance at a CME under the policy provisions is a condition subsequent that triggers a prejudice analysis.

. The majority contends that Griffin might have been based on the 1976 version of the PIP statute, which contained the forfeiture provision. That is simply wrong. In Custer Medical Center v. United Automobile Insurance Co., 62 So.3d 1086, 1091 (Fla.2010), the court stated, "In Griffin, the Third District considered the 1975 version of the PIP statute, which did not include the ‘unreasonable refusal’ provision, and held that an insured’s failure to comply with the condition precedent of attendance at a medical examination constituted grounds to enter judgment for the insurer.”